**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| B.H., minor student, by her Mother ) | FILED: SEPTEMBER 2, 2008 |
| & Next Friend, S.H., and Each Individually, ) | 08CV4974 |
| ) | JUDGE NORGLE |
| Plaintiffs, ) | MAGISTRATE JUDGE MASON |
| ) | CEM |
| vs. ) | Case No: |
| ) | Judge: |
| JOLIET SCHOOL DISTRICT 86 ) | |
| & ILLINOIS STATE BOARD OF EDUCATION, ) | Jury Demand |
| ) | |
| Defendants. ) | |

## COMPLAINT

NOW COMES B.H., minor student, by her Mother and Next Friend, S.H., ("Mother"),

and Both Individually, by and through counsel, Joseph Daniel Thomas, Attorney at Law, and

submit this Complaint against Defendant JOLIET SCHOOL DISTRICT 86 ("District"),

pursuant to 34 CFR Part 300 *et seq.*, 23 IAC Part 226 *et seq.* and the Rehabilitation Act § 504,

29 U.S.C. § 794; and say as follows:

## I. INTRODUCTION

1.      This suit arises from the efforts of the Plaintiffs to enforce their rights to a free,

appropriate public education ("FAPE") for B.H. and to be free from disability discrimination.

Their rights are enforceable pursuant to the Individuals with Disabilities Education Act as

amended[1] ("IDEA"), 20 U.S.C. § 1401 *et seq*. and § 504 of the Rehabilitation Act.

2.      This Complaint contains an appeal of the final administrative Decision and Order

(the "Final Order") by Impartial Hearing Officer ("IHO"), Carolyn Smaron, issued on June 4,

2008 in Illinois State Board of Education ("ISBE") Case No. 2008-0245 (Originally assigned

ISBE Case No. 2007-0268). (See Exhibit 1, Final Order).

---

1. All references are to IDEA as amended in 2004 and regulations promulgated pursuant to it unless

3.      This Final Order followed a three-day special education due process hearing pursuant to the IDEA and related state law.

4.      This appeal is based upon a number of errors in the inaccurate and incomplete Final Order and in the improper rulings in the administrative proceedings.

5.      Among those errors are mistakes and misapplications of law; incorrect and misapplied legal standards; factual errors and omissions in using the administrative record; and findings of fact that are contrary to the weight of evidence.

6.      The Final Order specifically failed to make sufficient findings as to the credibility of witnesses and failed to acknowledge and explain substantial testimony and material evidence that conflicted with the findings of fact and conclusions of law, especially the key admissions by the District witnesses.

7.      The Final Order and various procedural rulings also specifically ruled that Plaintiffs could not obtain a hearing on the Plaintiff's issue of the District illegally restricting IEP Meeting times to only those allowed by its collective bargaining agreement with the union representing District staff.

8.      Said rulings claimed the law allowed Districts to so limit IEP Meeting times, in spite of the IDEA requirement that the District arrange a mutually agreeable time with the parent for conducting IEP Meetings, and in spite of the District allowing meeting times after school hours for regular education program parents.

9.      This Complaint also requests costs including attorney fees of this action and of the administrative proceeding below.

10.      The Plaintiffs demand a jury trial on Rehabilitation Act claims, including meeting times for students with disabilities.

---

noted.

## II. JURISDICTION AND VENUE

11.    This Court has jurisdiction pursuant to F.R.C.P. 65; 28 U.S.C. §1331; and 20 U.S.C. §1415(i)(2).

12.    The Plaintiffs bring this action pursuant to the Individuals with Disabilities Education Act ("IDEA") 20 U.S.C. §1401 et seq. and its procedural safeguards at § 20 U.S.C. § 1415, the Illinois School Code, 105 ILCS 5\14-8.02(a) and related state law.

13.    The Plaintiffs also bring this action pursuant to the Section 504 of the Rehabilitation Act for disability discrimination.

14.    Venue is proper in this Court because the acts complained of occurred in and the parties reside in and do business in the Northern District of Illinois, Eastern Division.

## III. PARTIES

15.    Plaintiff S.H. is the Mother of B.H., a minor student, and at all times pertinent, the Plaintiffs have lived in Joliet, Illinois, in Will County, Illinois.

16.    B.H. is a 13-year-old child going into 6th Grade in the fall of 2008 with a learning disability ("LD"), attention deficit disorder ("ADD") and an auditory processing deficit.

17.    The Defendant District acts as a Local Educational Agency ("LEA") under IDEA regulations found at 34 C.F.R. Part 300 et seq. and related state regulations found at 23 IAC Part 226 and is responsible for ensuring FAPE for students with disabilities pursuant to 20 U.S.C. §1412(a) and 105 ILCS 5\14-1 et seq.

18.    Defendant Illinois State Board of Education ("ISBE") acts as a State Educational Agency under these same regulations, appointed the IHO in the administrative proceeding below, is responsible for providing the Court with a certified copy of that proceeding, and is brought in as a defendant here for the sole purpose of providing that record to the Court.

## IV. FACTS & PROCEDURAL POSTURE

19.     During 2004, the District provided special education services to B.H. who was then eligible under the category of speech and language disorder.

20.     Subsequently, the District determined that B.H. was no longer eligible, claiming that her articulation had improved, but without conducting a formal evaluation.

21.     On October 10, 2006, the Mother requested again, in writing an evaluation to determine B.H.'s eligibility for special education.

22.     On October 28, 2006, the District responded to the request by stating in writing that because of excessive absenteeism the previous March of 2005, the District could not evaluate B.H. for eligibility and could not make her eligible, which was false.

23.     On November 20, 2006, the Mother made another written request for an evaluation and gave her written consent for that evaluation to determine eligibility, but did not explain why it needed a second consent when it had not acted on the first consent.

24.     On December 18, 2006, the Mother paid for an auditory processing evaluation by Trude Reiser, CCC-A, SLP.

25.     On December 21, 2006, the District responded to the Mother's request in writing by which it agreed to evaluate B.H. to determine her eligibility.

26.     In February 2007, a Domain Meeting was held to determine the types of evaluations needed of B.H., and the Mother presented the District with the Evaluation Report from Trude Reiser.

27.     The types of evaluations the District decided to use were based, in part, upon Trude Reiser's Evaluation Report.

28.     On April 11, 2007, the District held an IEP Meeting for B.H. and determined her eligible again for special education. this time under the category of specific learning disabilities.

29.     Subsequently, the Mother made a written request for an Independent Educational Evaluation ("IEE") at public expense.

30.     On May 18, 2008, after the District refused to pay for the requested IEE, it filed its own request for a due process hearing as required by IDEA's Procedural Safeguards, and the ISBE assigned it ISBE Case No. 2007-0268.

31.     The Mother meanwhile paid for a neuropsychological evaluation of B.H. by neuropsychologist Dr. Rudy Lorber.

32.     On June 25, 2007, the Mother attempted to file a due process Complaint with the District at its administrative offices, but the District refused to accept it.

33.     This District refusal was a violation of IDEA's Procedural Safeguards.

34.     The Mother then requested a due process hearing by filing a Complaint directly with the ISBE asserting violations of IDEA and related state law by the District.

35.     The Mother's Complaint was ultimately joined with the District's Complaint on the IEE issue.

36.     Subsequently, the Mother withdrew her Complaint without prejudice, leaving the District's issue of denying the Mother's IEE request as the remaining issue for adjudication.

37.     Subsequently, the District conceded the IEE issue of reimbursement of Dr. Lorber's evaluation by default when it agreed to reimburse the Mother for the money she paid for the IEE by the neuropsychologist and withdrew its Complaint in writing. (See Exhibit 2, Concession Letter of District).

38.     On August 28, 2007, the IHO issued a Final Disposition Order confirming dismissal of the case without prejudice based upon the District's withdrawal of its Complaint and its commitment to pay the Mother reimbursement, but retaining jurisdiction in case issues were revived between the parties within one year. (See Exhibit 3, Final Disposition Order)

39.     Thereafter, the District continued to deny the Plaintiff's rights, the Mother renewed her original Complaint and submitted an Amended Complaint including an issue regarding the reimbursement for the audiological processing evaluation by Trude Reiser that the District had used in determining which types of evaluations to conduct and which services were needed for B.H.

40.     The ISBE assigned the Mother's Complaint ISBE Case No. 2008-0245.

41.     The District filed a Motion to Dismiss the renewal of the Plaintiff's Complaint which was originally part of ISBE Case No. 2007-0268, but the IHO ruled to deny the District's Motion to Dismiss the renewal of the Mother's previously filed issues, and to hear the IDEA issues in the Amended Complaint. (See Exhibit 4, Amended Complaint for Administrative Hearing).

42.     An administrative hearing was held, and the Final Order was issued in which the Plaintiffs prevailed on at least one issue.

## V. OVERVIEW OF APPLICABLE LAW

**Evaluation of Full Nature & Extent of Disabilities Required**

43.     The IDEA is designed to "assure that all children with disabilities have available to them...a free and appropriate public education ("FAPE") in the least restrictive environment as is mandated under IDEA. 20 U.S.C § 1400(c).

44.     The ISBE has created a guidance manual, called the ISBE Special Education Policies and Procedures, to explain and instruct Districts like the Defendant District here, in understanding and complying with IDEA and related state law.

45.     The IDEA requires the District to promulgate its own publicly available guidance manual, called District Special Education Policies and Procedures, that must be consistent with the ISBE Special Education Policies and Procedures.

46.     The IDEA itself has been codified in the federal regulations at 34 CFR Part 300 *et seq*. and the parallel state regulations at 23 IAC Section 226 *et seq*.

47.     23 IAC Section 226.10 states that "the requirements ...shall apply in every instance when a child is or may be eligible for special education and related services."

48.     The IDEA has provisions requiring that the educational needs of a child be determined after evaluation of the full nature and extent of her disabilities to provide a rational basis for developing a specially designed program responsive to those needs. 34 CFR 300.15 and 300.301.

**Procedural Safeguards Important**

49.     IDEA and its regulations contain Procedural Safeguards to ensure the rights of the parents of students with disabilities, including the right to file a due process complaint when they believe the District is violating IDEA.

50.     Those Procedural Safeguards include due process rights of presenting evidence, confronting and cross-examining witnesses. 34 C.F.R. 1415 *et seq*.

51.     Those Procedural Safeguards also ensure that where the District refuses and parent's request for an IEE at public expense, that it will prove at hearing that its own evaluation is appropriate. 34 C.F.R. 1415 *et seq*.

**IEPs Must be Developed Cooperatively**

52.     To insure that disabled children receive FAPE, the IDEA requires that school districts work with parents to create an IEP which sets forth the child's educational goals. 20 U.S.C. §§1401(11), 1414(d).

53.     IDEA mandates mutually agreeable IEP Meeting times and locations between the parents and Districts, and Illinois has emphasized that the District must "take whatever action is necessary to facilitate the parent's understanding of and participation in the proceedings at a

meeting,..." under 23 IAC § 226.530.

54.    IDEA Section 1414(d)(4)(A) requires that the school review the IEP at least annually "to determine whether the annual goals for the child are being achieved" and revise the IEP to address "any lack of expected progress toward the annual goals" and "the child's anticipated needs".

55.    The IEP must include specific information such as a statement of the child's present levels of performance, including how the child's disability affects the child's involvement in the general education curriculum, annual goals and short term objectives for improvement, a description of the specifically designed instruction and services that will enable the student to meet the goals, lack of any progress towards the goals and the extent to which the child will participate with nondisabled peers.20 U.S.C.§1414(d).

56.    The IDEA obligates the District to address the student's unique educational needs through an IEP if the District determines that the student meets the criteria for at least one of the categories of disabilities enumerated in the IDEA and its implementing regulations. 20 U.S.C. §1414.

57.    Once determined eligible, a District must provide an appropriate program and placement responsive to all of the child's unique needs.23 IAC 226.50(d).

**Continuum of Placement Options**

58.    The District must review a continuum of placement options, starting with the regular education classroom, to determine the least restrictive one in which the student's program can be implemented.

59.    Federal and state law provides Parents with the right to request an impartial Due Process Hearing if the parents disagree with any matter related to the identification, evaluation or educational placement of the student or provision of FAPE to the child. 20 U.S.C.

§1415(b)(6) & (d)(2)(j); 23 IAC 226.605.

60.     IDEA's Procedural Safeguards also provide the parents of student with disabilities the opportunity to have a due process hearing when the District refuses to pay for a requested IEE.

## VI. APPEAL OF FINAL ORDER

**Final Order Not Thorough and Complete**

61.     The Final Order is not thorough and complete, as recounted above.

62.     The lack of scrutiny of the available evidence largely made the Final Order a statement of personal opinion of the IHO, rather than a fair and impartial adjudication based upon a weighing of the evidence, and it did not fairly and impartially decide the issues presented.

**IHO Denied Discovery Needed to Confront District Contentions**

63.     Another reason for appeal of the Final Order is that the IHO denied the Parents' the right to discover and present the evidence they needed on issues, and to confront and cross-examine witnesses as is their statutory right under IDEA.

64.     This denial prevented the Parents from confronting the District's contentions and from preparing and offering evidence of an expert report on any observed problems.

65.     It also prevented them from avoiding surprise from testimony of District witnesses whom the Parents could not effectively cross-examine as a result.

**Final Order Contains Multiple Mistakes of Law & Fact**

66.     Many legal mistakes in the Final Order correlated with factual errors and omissions in the Final Order, and it indicates the IHO did not understand or was unwilling to address directly the legal issues presented by the Parents.

67.     The Final Order contained misapplications of legal standards for determining

whether procedural rights were violated, including the misapplication of the legal standards under IDEA for scheduling IEP Meetings at mutually convenient times with the Mother.

68.     It misinterpreted the Plaintiff's evidence and overstated the District's evidence.

69.     The Final Order failed to make credibility determinations on key witnesses, such as the District Psychologist, yet relied upon their testimony in the face of conflicting evidence that was largely unacknowledged or explained as outweighed by other evidence.

## VII. SUPPLEMENTAL EVIDENCE

70.     The Mother and Student request admission of new evidence and additional evidence that was denied by the IHO or was otherwise unavailable to the Plaintiffs during that hearing.

71.     The Plaintiffs request discovery and admission of all District correspondence, including email records regarding the Mother and B.H.

72.     The Plaintiffs request admission of Dr. Lorber's evaluation report, and request to depose him and to admit that deposition into evidence here.

73.     The Plaintiffs request discovery and admission of all District records regarding collective bargaining agreements, personnel policy manual, correspondence regarding staff availability for work and other documents that limit the District staff work hours or refer to the District's special education program.

74.     The Plaintiffs request admission of the Student's educational records prior to June of 2005 because the IHO had denied their admission at hearing.

## COUNT I
## PARTIAL APPEAL OF FINAL ORDER

**THE DISTRICT DENIED FAPE FOR B.H. AND HER MOTHER BY ITS PROCEDURAL VIOLATIONS OF IDEA.**

75.     For this paragraph, Plaintiffs incorporate all of the preceding paragraphs by

reference.

76.    The Plaintiffs issues were properly before the IHO during the administrative proceeding below, as recounted in the Mother's Amended Due Process Complaint and the Final Order.

77.    The Plaintiffs appeal the Final Order, except where Plaintiffs have won an issue.

**THEREFORE**, Plaintiffs respectfully pray that this Court enter judgment in their favor and against the Defendants as follows as to Count I:

A.) Find that the Plaintiffs are the prevailing party in this matter and reverse the Final Order of the IHO in this case, except the issue the Plaintiffs have already won;

B.) Find that the District has violated the procedural safeguards granted by IDEA to the Plaintiffs.

C.) Order compensatory education at Acacia Academy' summer program to make the Plaintiffs whole for the deprivation of education opportunity for the Student, for the denial of Procedural Safeguards and for the denial of the Mother's opportunity to participate in the formulation of FAPE.

D.) Order the Defendants to pay costs, including court costs and reasonable attorney's fees, for this action;

E.) Award such other appropriate relief as justice may require.

## COUNT II
## ATTORNEY FEES

**THE DISTRICT OWES THE PARENT THE COSTS, INCLUDING ATTORNEY FEES, OF THE ADMINISTRATIVE PROCEEDINGS BELOW BECAUSE THE PLAINTIFFS PREVAILED ON A SIGNIFICANT ISSUE BY DEFAULT OF THE DISTRICT.**

78.    For this paragraph, Plaintiffs incorporate all of the preceding paragraphs by reference.

79.    The Plaintiffs have already become prevailing parties when the District conceded

certain issues contained in their Amended Complaint at hearing.

80.    The District conceded the Plaintiffs issue of reimbursement and related costs by repaying them for the Independent Educational Evaluation ("IEE") by Dr. Rudy Lorber. (See Exhibit 2, Concession Letter of District Counsel).

81.    The District defaulted on their Complaint by its withdrawal prior to meeting its burden of proof at hearing that it its evaluations were appropriate as otherwise required by IDEA.

82.    This concession of the IEE issue is evidence of the District 's failure to meet its burden of proof that its evaluation was appropriate.

83.    By demanding and obtaining this substantial reimbursement, the Mother and Student have changed the legal relationship between them and the District because the District conceded this issue to the Mother and Student and actually paid the demanded reimbursement.

84.    The IHO confirmed this change in status by her issuance of a Final Disposition Order.

85.    On August 7, 2008, the Mother made a written demand on the District for costs including attorney fees for the administrative proceeding in the amount of $47,262.38, but no response was given to date.

**THEREFORE**, Plaintiffs respectfully pray that this Court enter judgment in their favor and against the Defendants as follows as to Count II:

A.) Find that the Plaintiffs were the prevailing party,

B.) Find that the District violated the Procedural Safeguards of the Mother and Student.

C.) Order the Defendants to pay costs, including court costs and reasonable attorney's fees for the administrative proceeding below;

D.) Award such other different and appropriate relief as justice may require.

## COUNT III
## DISABILITY DISCRIMINATION

**THE DISTRICT ENGAGED IN DISABILITY DISCRIMINATION UNDER THE REHABILITATION ACT WHEN IT ACTED ADVERSELY AGAINST THE STUDENT WITH A DISABILITY AND HER MOTHER WHEN SHE ACTED AS THE STUDENT'S ADVOCATE.**

86.     For this paragraph, Plaintiffs incorporate all of the preceding paragraphs by reference.

87.     The Plaintiffs issues regarding disability discrimination were properly before the IHO during the administrative proceeding below, as recounted in the Mother's Amended Complaint and the Final Order.

88.     The Plaintiffs have exhausted their administrative remedies for these issues in the special education due process proceeding below.

89.     The Plaintiffs demand a jury trial on the claims of disability discrimination.

90.     The Student is an individual with a disability because she is eligible for Special Education.

91.     The Mother has acted as an advocate for the Student with communicating and meeting with the District.

92.     The District has conducted meetings for parents of nondisabled students at times outside of the regular school hours going late into the evening.

93.     The District has refused to meet with the Mother at reasonable times outside of regular school hours, or outside of business hours.

94.     IDEA provides parents the right to invite others to participate in IEP Meetings if they are knowledgeable about the student, such as experts who have evaluated the student.

95.     The Plaintiffs were denied their right to participate in meetings with District personnel at times mutually convenient times based on the District's contention that its

13

agreements with the union restricting the time of school staff availability.

96.     Such meeting time restrictions prevented the Mother from having her expert, Dr. Rudy Lorber, participate in the meeting by phone after his work hours at another school district in the Pacific Standard Time Zone ("PST").

97.     The Mother requested such times for IEP meetings, but was refused by the District. (See Exhibit 5, Letter from Bollero Restricting IEP Meeting Times)

98.     The District, however, regularly conducts parent-teacher conferences at times after regular school hours for parents whose children attend the regular education program.

99.     This is discriminatory treatment that discriminates against the Mother and Student based upon disability and also retaliates against the Mother for her advocacy for the Student.

100.     The Mother and Student submitted this and other discriminatory act as an issue for hearing below.

101.     The IHO ruled as a matter of law that the District did not have to accommodate the Mother's and her expert regarding her requested IEP Meeting times under IDEA as amended.

102.     This ruling was contrary to law.

103.     The IHO, however, ruled that she did not have authority to decide issues under the Rehabilitation Act.

104.     Section 504 of that Act, prohibits discrimination based upon disability or advocacy, but the District discriminated against the Mother and the Student based upon the Student's disability and the Mother's participation in the special education program as an advocate for her daughter.

**THEREFORE**, Plaintiffs respectfully pray that after jury trial this Court enter judgment

14

in their favor and against the Defendants as follows as to Count III:

    A.) Find that the Plaintiffs were the prevailing party on this issue,

    B.) Order the Defendants to pay costs, including court costs and reasonable attorney's fees;

    C.) Issue a declaratory judgment that the District discriminated against the Mother and the Student in scheduling meeting hours on a discriminatory basis in violation of the Rehabilitation Act;

    D.) Enjoin the District from any further disability discrimination as to meeting times against the Mother,

    E.) Post such declaratory judgment and order enjoining further discrimination in a conspicuous place on its website and on bulletin boards in the District Schools that can be seen by the public or parents;

    F.) Award such other different and appropriate relief as justice may require.

Respectfully submitted and Dated: September 1, 2008

_____
s/ Joseph Daniel Thomas, Attorney at Law
IL Attorney Bar Number: 6212202
Attorney for the Plaintiffs B.H. and S.H.
10707 N. State Road 55, Demotte, IN 46310-9671
Telephone: 312.296.8203
Fax: 800.882.3714
E-mail: thomaslaw@netnitco.net

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| B.H., minor student, by her Mother | ) | |
| & Next Friend, S.H., and Each Individually, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No: |
| | ) | Judge: |
| JOLIET SCHOOL DISTRICT 86 | ) | |
| & ILLINOIS STATE BOARD OF EDUCATION, | ) | Jury Demand |
| | ) | |
| Defendants. | ) | |

**EXHIBIT LIST**

1    Final Order, H_____ v. Joliet School District 86, ISBE Case No. 2008-0245

2.    Concession Letter of District in Case 2007-0268 dated August 28, 2007

3.    Final Disposition Order ISBE Case 2007-0268 dated August 28, 2007

4.    Amended Due Process Complaint dated January 11, 2008

5.    Letter from Bollero Restricting IEP Meeting Times (to end by 3:00 pm)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| B.H., minor student, by her Mother & Next Friend, S.H., and Each Individually, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No._____ |
| | ) | Judge _____ |
| JOLIET SCHOOL DISTRICT 86 | ) ) | |
| Defendant. | ) | |

**NOTICE OF FILING**

To:     Jennifer L. Bollero, Esq.
        Sraga, Engler, and Boyle, LLC
        2215 York Road #206
        Oak Brook, Illinois 60523-2392
        630-928-1200 ext. 207
        Fax/630-928-1300
        jbollero@sragaenglerboyle.com

        Illinois State Board of Education
        Darren R. Reisberg, General Counsel
        100 N. 1st Street
        Springfield, IL 62777
        866/262-6663

  PLEASE TAKE NOTICE that on September 1, 2008, Plaintiffs presented to the Clerk for filing their Complaint w/ Exhibits.

_____
                    s/ Joseph Daniel Thomas
                    Attorney at Law
                    Counsel for B.H. and S.H.

17

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2008, I filed the Complaint w/ Exhibits and a Waiver of Service with the Clerk and sent notice to the parties below by first class mail.

1)     Jennifer L. Bollero, Esq.
       Sraga, Engler, and Boyle, LLC
       2215 York Road #206
       Oak Brook, Illinois 60523-2392
       630-928-1200 ext. 207
       Fax/630-928-1300
       jbollero@sragaenglerboyle.com

2)     Illinois State Board of Education
       Darren R. Reisberg, General Counsel
       100 N. 1st Street
       Springfield, IL 62777
       866/262-6663


_____
s/ Joseph Daniel Thomas, Attorney at Law
IL Attorney Bar Number: 6212202
Attorney for the Plaintiffs B.H. and S.H.
10707 N. State Road 55, Demotte, IN 46310-9671
Telephone: 312.296.8203
Fax: 800.882.3714
E-mail: thomaslaw@netnitco.net

08CV4974
JUDGE NORGLE
MAGISTRATE JUDGE MASON

**EXHIBITS 1 THROUGH 5**    CEM

EXHIBIT 1

Case Number:    2008-0245
 vs. Joliet PSD 86
Hearing Officer: Carolyn Ann Smaron

Illinois State Board of Education
Special Education Services
100 North First Street
Springfield, Illinois 62777

# Impartial Due Process Hearing Decision
## Cover Page

Instructions: Complete this form and return it along with the decision. The information collected on this form will be used for the purpose of indexing the decision by subject matter as required by 23 Illinois Administrative Code 226-695

**District Name**    Joliet PSD 86

**Phone:**  8157403196

**Superintendent**    Dr Phyllis Wilson
**Address**            420 N Raynor Ave Joliet, IL  60435
**Represented by**   JENNIFER BOLLERO

**Parent Name** ███████████

**Phone:** ███████████

**Address** ███████████
**Represented by**   JOSEPH DANIEL THOMAS

### Date and Timelines

**Date of Written Request:**  12/07/2007
**Date of Pre-hearing Conf:** 02/18/2008

**Date of Hearing:** 05/28/2008 to 5/28/2008 12:00:00 AM
**Date of Decision:** JUNE 4, 2008

### Summary of Decision

The mother asserted that (a) the school district's delay in responding to a request to evaluate was a procedural violation of IDEA, (b) that the reasons stated for the refusal to evaluate were a substantive violation of IDEA, (c) that the school district did not complete a subsequent evaluation of the student within sixty days of the parent's request for an evaluation; and (d) the school district considered a private evaluation of the student but refused to reimburse the parent for the cost of the private evaluation.

ILLINOIS STATE BOARD OF EDUCATION
SPECIAL EDUCATION DUE PROCESS HEARING

## ILLINOIS STATE BOARD OF EDUCATION
## IMPARTIAL DUE PROCESS HEARING

|  |  |  |
|---|---|---|
| **Student** | ) ) ) | **Case No. 2008-245** |
| **vs.** | ) ) | |
| **JOLIET SCHOOL DISTRICT 86** | ) ) | |
| **Local School District** | ) | |

**CAROLYN ANN SMARON, Hearing Officer**

### DECISION AND ORDER

### PROCEDURAL MATTERS

On January 11, 2008 counsel for the mother of the student filed an Amended Request for due process reinstating some of the issues raised in the initial request for due process and asserting a new issue. By Preliminary Order the matter was set for prehearing conference on February 18, 2008. The parties engaged in an unsuccessful resolution session on January 25, 2008.

Counsel for the school district moved to dismiss the reinstatement of the original request asserting that applicable statutes did not authorize a party to "renew issues" from a previously withdrawn due process request. By Preliminary Order issued January 31, 2008, that motion was denied and the prehearing conference date confirmed.

Counsel for the school district moved to dismiss certain portions of the Amended Complaint asserting that the hearing officer did not have jurisdiction to hear alleged violations of §504 of the Rehabilitation Act and parallel provisions of the Americans with Disability Act and in addition asserting that the issue of the parent's request to hold an IEP meeting at 6:30 p.m. had been decided by Preliminary Order issued on December 13, 2007.

By Preliminary Order issued February 13, 2008, the hearing officer dismissed, with prejudice, all claims by the parents sounding in violations of §504 of the Rehabilitation Act and parallel provisions of the Americans with Disability Act. In addition, the hearing officer clarified her previous ruling regarding IEP conferences at 6:30 p.m. concluding that "it is reasonable to schedule an IEP meeting which begins and/or ends with the contractual hours of certified school staff of the school district" Finally, the hearing officer ruled that the hearing officer had no jurisdiction to issue any order or directive regarding any other student other than the student named in the above captioned case. At the prehearing conference, the hearing officer clarified that the determination of the contractual hours of the certified school staff were those obligations on a "typical" school day at the building where the student attends school within the school district.

The prehearing conference was conducted on February 18, 2008. JOSEPH DANIEL THOMAS represented the interests of the mother of the student and JENNIFER L. BOLLERO represented the interests of the school district. Both parties provided the hearing officer with prehearing statements of the

issues and preliminary lists of witnesses and documents.

Based on the consensus of the attorneys, the hearing was scheduled for seven days. In fact, testimony was taken on March 19, 2008, April 1, 2008 and April 3, 2008. By agreement, closing statements were submitted on May 28, 2008 at which point the record was closed. All parties received transcripts of the testimony elicited during the hearing.

## ISSUES IDENTIFIED AND REMEDIES REQUESTED
## AT THE PREHEARING CONFERENCE

### PARENT ISSUES:

1.    The parent alleges that she made a written request for an evaluation on October 10, 2006 but that the school district did not respond to the parents request within ten (10) days of the request. The parent further alleges that the school district's response was not legally sufficient as to why they refused to conduct an evaluation and further actively misrepresented applicable law on the subject of requests for evaluation.

2.    The parent alleges that she made a written request for and consented to an evaluation on November 21, 2006 but that the school district did not complete the evaluation within sixty (60) school days after her written consent.

3.    The parent alleges that some but not all of Ms. Reiser's auditory processing evaluation/recommendations were included in the IEP created on April 11, 2007. The parent asserts that the evaluation/recommendations were not discussed at the aforesaid IEP meeting and does not know how that evaluation/recommendations came to be inserted within the IEP. As a consequence thereof, the parent asserts that she is entitled to reimbursement for that evaluation in the amount of $300.00 plus her traveling expenses in presenting the student for evaluation by Trude Reiser.

### REMEDY REQUESTED:

A.    The parent requests a finding that the school district violated the procedural rights of the student and that as a result thereof, the student should be placed at Acacia Academy at public expense for a period commensurate with the period of time that the student's procedural rights were violated. The parent alleges that the requested compensatory educational services should include tutoring utilizing research-based teaching approaches and requests that those services be provided at Acacia Academy which the parent asserts is an appropriate placement for the student as it uses several research-based teaching approaches that can accelerate the student's progress.

B.    The parent requests an Order that the school district reimburse her for the auditory processing evaluation.

**SCHOOL DISTRICT RESPONSE:** The local school district asserts that the special education needs of the child have been appropriately identified and that the special education program and related services set forth in the child's Individualized Education Plans provide the student with a free appropriate public education in the least restrictive environment. Specifically the school district requests a finding that its denial of an evaluation after an evaluation was requested by the parent on October 10, 2006 was appropriate; that it complied with the statute when it completed its evaluation within sixty (60) school days of receiving informed written consent from the parent; and that while it considered the auditory processing evaluation, it was not considered to the extent that the parent should be reimbursed.

## STIPULATIONS

Counsel for the parent stipulated at the prehearing conference that the parent had not raised the appropriateness of the April 11, 2007 Individual Education Plan in either the initial Request for Due Process or in the Amended Request for Due Process. No testimony or documents was allowed relating to the appropriateness of the April 11, 2007 Individual Education Plan.

## FACTS

The recitation of the facts of this case was gleaned by a review of the documents within the joint document book and the hearing officer's notes as to the facts elicited or facts that could be inferred from the testimony of the various witnesses.

The background facts are set forth below so as to give context to the parent's allegation that the school delayed beyond ten (10) days in responding to her initial request for a special education evaluation, that the school district delayed beyond sixty (60) days in completing a special education evaluation of the student, and that the school district utilized the evaluation of Trude Reiser in its evaluation of the student, yet refuses to reimburse the parent for its cost.

### 2004-2005 3rd grade

On March 4, 2005 the mother of the student was notified that the student's 3rd grade teacher had referred the student for an evaluation because the student was struggling with academic skills. EXHIBIT 2 The mother was invited to attend a conference on March 16, 2005 to review the student's educational status and determine what additional data might be needed to complete the evaluation. EXHIBIT 1 On March 16, 2005 the student's mother and grandmother, the student's 3rd grade teacher, a school district psychologist, April Terry, and a school district social worker, Mary McGuire, concluded that additional data was needed in the area of social/emotional status, general intelligence, and academic performance. The mother gave informed written consent to conduct the evaluation (including securing additional data) on March 16, 2005. EXHIBIT 3-5 On May 10, 2005 the parties, including the student's mother and grandmother, met to review the various evaluation reports in order to determine whether or not the student was eligible for special education and related services.

April Terry, the school psychologist, reported that the student's Cognitive Assessment System (CAS) Full Scale standard score was 81, ranking the student at the 10th percentile when compared to others her age. EXHIBIT 107-108 Ms. Terry also reported that the student's scores on the Woodcock-Johnson Tests of Achievement-III indicated that her academic performance was in the average range when compared to the average student at grade 3.6. EXHIBIT 109-110 The school nurse reported that the student passed the hearing screening on March 6, 2003 and no concerns about the student's hearing had been raised either at home or in the school setting. The school nurse further reported that the student was under the care of a physician (Dr. R.M. Choksi) for treatment of Attention Deficit Disorder/Inattentive type and that after the student started medication there were dramatic improvements. EXHIBIT 111 The school social worker reported that the student had been working with the social worker since 2nd grade to address social/behavioral concerns. The social worker reported that these issues had improved considerably since the start of medications for Attention Deficit Disorder. The social worker concluded that there were no social-emotional concerns impacting learning. EXHIBIT 112-113 April Terry also reported that the student had received speech services from November 2000 through January 2004 (speech services had been focused on articulation EXHIBIT 221). Both the student's mother and teacher reported that the student communicated effectively. The participants at the May 10, 2005 meeting

concluded that the student was not eligible for special education. EXHIBIT 119 The parties agreed to reconvene at the beginning of 4th grade to discuss whether the student might be eligible for a 504 Plan.

## 2005-2006 4th grade

On September 27, 2005 the student's mother attended a meeting convened for the purpose of discussing whether the student might be eligible for a Section 504 Plan. The parties agreed that she was and created a Section 504 Plan for the student. The Plan noted that the student was rushing through her work and having trouble working independently. The Plan called for the intervention of teaching strategies to address these issues. The mother of the student gave her written consent for the accommodations. EXHIBIT 124-125. At the request of the mother, the September 28, 2005 504 Plan was reviewed with her and the student on November 1, 2005. EXHIBIT 126.

On April 12, 2006 the parent was advised that the student had accumulated 30 days of absences including 19.5 days in the 3rd quarter of the 2005-2006 academic year. EXHIBIT 136-137 The student's grades plummeted during the 3rd quarter. EXHIBIT 145 On April 19, 2006 a meeting was convened for the purpose of revising the 504 Plan. The 504 Plan was revised and the mother of the student gave her written consent for the accommodations. EXHIBIT 141-142

The student attended 14 of the 18 days of summer school in 2006. Summer school was focused on reading. The summer school reading curriculum is not the same as the reading curriculum used during the regular school year. The student was not in attendance when the post assessment tests were given and thus it was difficult to determine what progress might have been made. EXHIBIT 147-148.

## 2006-2007 5th Grade

On October 10, 2006 a meeting was convened for the purpose of discussing and revising the 504 Plan. The Plan noted that the student was (a) not following directions on a multistep task and/or problems in class and (b) having difficulty with organization-homework-assignments. The Plan called for the intervention of teaching strategies to address these issues. The mother of the student gave her written consent for the accommodations. EXHIBIT 154-158

On October 10, 2006 the mother of the student requested an evaluation of the student in all subjects. That written request was referred to April Terry. Ms. Terry testified that she administered an academic screening and reviewed the student's grades in 4th and 5th grade. Ms. Terry testified that the student's grades in the 3rd quarter of 4th grade declined – the same period when the student was absent 19.5 days. She also spoke to the student's 4th and 5th grade teachers and the social worker and speech pathologist who had previously worked with the student. Ms. Terry testified that she reviewed the student's 504 Plan dated October 10, 2006. Ms. Terry testified that she was of the opinion that eligibility for special education must be premised upon a conclusion that the student's academic difficulties were not a result of a lack of instruction in reading or math. Ms. Terry testified that if the IEP team had determined that the student's difficulties could be attributed to a lack of instruction in reading or math, the student could not be found eligible for special education. Ms. Terry testified that she believed that the student's academic difficulties were the result of her excessive absences in 4th grade i.e. she had not received the required instruction in reading or math. Ms. Terry testified that she had reviewed the student's summer school progress reports. She noted that the summer school focused on reading. The student's math grades plummeted after her excessive absences in the 3rd quarter of 4th grade. She concluded that summer school did not address her concern about "lack of instruction in reading and math". Ms. Terry testified that she reviewed the student's ISAT scores and noted that the student barely met State standards in

Mathematics and was below State standards in Reading. Ms. Terry testified that she believed that she needed to provide an accurate and thorough response to the parent's request for an evaluation. Her attempts to gather information to provide a complete and accurate response took more than the required ten days.

By letter dated October 27, 2006, Ms. Terry advised the parent that an evaluation would not be conducted for the following reasons:

> *Brittany was recently administered an academic screening to determine strengths and weaknesses in the core subject areas. Strengths were indicated in the areas of reading fluency and written expression, while weaknesses were found in reading comprehension, spelling and math. Although she is struggling in the classroom, Brittany's poor attendance last year excludes her from being tests or even made eligible for Special Education Services. She needs to have a consistent school experience before testing can be considered. In addition, Brittany was just tested in 2005 and not found eligible for Special Education Services. Therefore, Brittany's current 504 Plan will be continued and her progress will be monitored throughout the school year. If little progress is noted by the end of the school year, a new referral can be made.*

Ms. Terry testified that she included a copy of the parent's procedural safeguards with her letter to the parent and advised the parent that she should call her if the parent had any questions.

On November 1, 2006 the mother of the student made a written request for copies of the student's special education records. The school district refused to release the testing protocols but agreed on a meeting date of November 14, 2006 to discuss the testing data. That meeting was cancelled by the mother and rescheduled to November 21, 2006.

On November 21, 2006 the mother, accompanied by an advocate, met with April Terry and her supervisor, Nancy Spangler. Nancy Spangler is the school district's Coordinator of Diagnostic Services. She is the psychologist at the junior high and is Ms. Terry's direct supervisor. At that meeting, Ms. Terry again outlined the basis for her decision that an evaluation was not warranted. Ms. Terry testified that neither the mother nor the advocate would accept the explanation. Instead the mother tendered another handwritten note requesting an evaluation of the student in all subjects. The handwritten note contained the following additional sentence: "Please consider this my request and consent to evaluate". EXHIBIT 161 Ms. Terry testified that at the end of the meeting, she reluctantly accepted the mother's referral. Ms. Spangler testified that she accepted the referral because she dislikes having an adversarial relationship with a parent stating "So, I mean – if they're pretty demanding and feel that it would be in the best interest of their child, then I'm going to be on their side and, say, yeah, we're going to take – you know, we'll take it." April Terry testified that Ms. Spangler advised the mother that a domain meeting would have to be scheduled, similar to the one that the mother had attended in May 2005. Ms. Terry testified that the parties discussed a date for that domain meeting and concluded that the domain meeting should be scheduled for January 9, 2007. Ms. Terry testified that it was clear to her that the mother understood that her consent would be sought on the day of the domain meeting.

After the meeting on November 21, 2006, the mother sought a central auditory processing evaluation from audiologist Trude Reiser, a recognized expert in that field. The mother testified that a friend had suggested that she seek out this evaluation. She and student met with Ms. Reiser on December 18, 2006. Ms. Reiser was provided no school records and the information which provided the basis for her recitation of the student's medical and educational background was provided by the mother. Ms. Reiser testified that she was aware that the student had been diagnosed with Attention Deficit Disorder-Inattentive Type but did not include that diagnosis in her report. The mother advised Ms. Reiser that a

domain meeting was then scheduled for January 9, 2007.

Ms. Reiser concluded that the student had normal bilateral hearing. Ms. Reiser further concluded that the student had a central auditory deficiency in that the student had mildly delayed auditory decoding skills and mildly delayed auditory closure skills. Because of these mildly delayed auditory processing deficiencies, Ms. Reiser stated that the student might be confused when trying to decode or digest new information or might have difficulty understanding information when it is presented quickly. Ms. Reiser concluded that the student had overall poor auditory memory skills and as a consequence was likely to have difficulty remembering what she hears. Finally, Ms. Reiser noted that during testing the student tracked visual stimuli from right to left instead of left to right. Ms. Reiser stated that the student may skip letters, words, or lines when reading. Ms. Reiser recommended certain classroom accommodations. Ms. Reiser's bill in the amount of $300 was paid by the mother. EXHIBIT 165-173, EXHIBIT 189

By letter dated December 20, 2006 the school district confirmed that the mother's written request for an evaluation had been accepted. The confirmation included a formal invitation to a domain meeting on January 9, 2007. When that domain meeting was cancelled by the mother, the domain meeting was rescheduled to January 18, 2007. When that domain meeting was cancelled by the mother, the domain meeting was rescheduled to February 8, 2007.

Trude Reiser's report was provided to the school district at the beginning of the domain meeting on February 8, 2007. P.J. Smith, the speech pathologist, testified that she reviewed Ms. Reiser's report during the domain meeting, paying particular attention to the assessments utilized by Ms. Reiser. Ms. Smith testified that the report was consistent with her observation of the student on January 29, 2007. In addition she noted that many of Trude Reiser's recommendations were strategies that were then being used in the classroom with and by the student. Ms. Smith believed that Trude Reiser's report confirmed the domain team's decision that no further speech/language evaluations were needed. Ms. Terry testified that there was nothing within the Reiser report to indicate that the student had a central auditory processing disorder or that the delays were anything other than mild. The participants concluded that the student's general intelligence and academic performance required current assessment by the school psychologist. EXHIBIT 186-188 Although offered the opportunity to provide her written consent for the evaluation, the mother did not sign the consent until February 15, 2007. EXHIBIT 196-197

On April 11, 2007 a meeting was convened to discuss the evaluation of the student and determine whether she was eligible for special education. Ms. Terry's assessment of the student's general intelligence utilized the ten subtests of the Wechsler Intelligence Scale for Children-Fourth Edition (WISC-IV). Ms. Terry had previously used the CAS to assess the student's cognitive abilities. Nancy Spangler directed Ms. Terry to utilize a different assessment in 2007 to avoid any possible "practice effect". The student's full scale IQ was 80 which classified her as within the low average range of intellectual functioning and ranked her at the 9th percentile when compared to other children her age. There was no significant difference between her Verbal Comprehension and Perceptual Reasoning scale scores indicating that the student expressed her intelligence equally through verbal comprehension and expression and through manipulation of concrete objects to solve nonverbal problems. Ms. Terry testified that as a consequence of Ms. Reiser's comments in her report about "poor auditory memory skills", she administered specific subtests in the WISC. Ms. Terry assessed the student's working memory abilities using the Working Memory Index WMI) and concluded that they were in the Borderline range. Ms. Terry assessed the student's speed of processing using the Processing Speed Index (PSI). While she concluded that the student had an average range and rank, the student performed inconsistently on the two subtests and thus Ms. Terry concluded that these results should be interpreted with caution. EXHIBIT 211-213 At the hearing Ms. Terry testified that based on the student's scores on the WISC-IV, there was no reason to suspect that the student had a disability.

Ms. Terry also assessed the student's academic performance using the Kaufman Test of Educational Achievement, Second Edition (KTEA-II) Ms. Terry concluded that the student's achievement in reading and written language were in the Average range and her achievement in math was in the Low Average Range. EXHIBIT 214-215.

Mary McGuire, the school district social worker, reviewed the student's records, interviewed the student's teacher and parent, and observed the student in the classroom. She concluded that there were no social, emotional or behavior concerns which interfered with the student's learning. Ms. McGuire found that the student's adaptive skills were age appropriate. EXHIBIT 218

P.J. Smith, the school district speech pathologist, assessed the student's communication status. Her file review revealed that the student had received speech services to address an articulation issue. She observed the student in the classroom on January 29, 2007 and concluded that the student's articulation skills were unremarkable at the level of spontaneous conversation. Ms. Smith had no concerns with the student's communication performance which would influence her conversational competence within an educational conversational exchange. EXHIBIT 220-221

At the meeting held on April 11, 2007 the participants concurred that the student's suspected disability was not from lack of instruction in reading and math. EXHIBIT 222 All of the school district personnel who testified stated that if the answer had been in the affirmative, the student could not have been found eligible for special education. The participants concluded that the student had a disability described as "moderate inattentiveness" which adversely affected her ability to attend to teacher instruction and the tasks at hand and initiate/complete tasks independently and comprehend reading materials and math story problems. Th e aforesaid disability fell within the IDEA disability category of "other health impairment/attention deficit disorder" Annual goals were developed the areas of concern. The participants concluded that certain classroom modifications were required. Many of these modifications had been contained within the student's 504 Plans. The participants concluded that the student should receive special education services on a pull-out basis for the remainder of 5th grade with placement in the REI setting for 6th grade. EXHIBIT 234-236 The mother of the student did not provide consent for the special education services until August 2007.

## APPLICABLE LAW

The law applicable to the facts in this case is set forth in the Individuals with Disabilities Education Act (IDEA), 20 USC §1401 et seq., the federal regulations to IDEA, 34 CFR Part 300, the School Code of Illinois, 105 ILCS §5/14-8.02 et seq., and the applicable state regulations, 23 Ill.Admin.Code Part 226. The local school district bears the burden of proof that at all times relevant it properly identified the nature and severity of the student's suspected disabilities and if appropriate, that it offered the student a free appropriate public education in the least restrictive environment, consistent with procedural safeguards.

In an administrative hearing, the party seeking the relief bears the burden of proof. *Schaffer v. Weast*, 126 S.Ct. 528 (2005). In the instant case, the school district bears the statutory burden that at all times relevant it properly identified the nature and severity of the student's suspected disabilities. The parents bear the burden of proving that the school district violated the procedural rights of the student to such an extent that it denied the student a free appropriate public education.

In *Board of Education, Hendrick Hudson Central School District. v. Rowley*, 458 US 176 (1982) ("Rowley"), the Supreme Court set forth a two pronged test for evaluating whether or not the school district has complied with applicable special education laws - there must be compliance with statutory procedures and then the individualized education program (IEP) developed through such procedures must

be reasonably calculated to enable the student to receive educational benefit. The parent asserts non-compliance with the statutory procedures.

## APPLICATION OF LAW TO THE FACTS

In matters alleging a procedural violation, a hearing officer may find that a child did not receive a FAPE only if the procedural inadequacies (i) impeded the child's right to a FAPE; (ii) significantly impeded the parent's opportunity to participate in the decision making process regarding the provision of a FAPE to the parent's child; or (iii) caused a deprivation of educational benefit. 34 CFR 300.513(a)(2).

It is clear to this hearing officer that the parent's letter dated October 10, 2006 represented a request for a special education evaluation. The school district was then responsible for processing the request, deciding what action should be taken, and initiating the necessary procedures. 23 Ill.Admin.Code §226.110(c)(1)  April Terry testified that she reviewed the student's records including her attendance, interviewed the student's 4th and 5th grade teachers, and administered an academic screening. Ill.Admin Code §226.520 required that the school district notify the parents of its decision within ten days of receipt of the request.  Instead, the school district notified the parent seventeen days after its receipt of the request.  April Terry testified that it took her more than ten days to compile an accurate and complete response to the parent's request.  April Terry testified that the delay on her part was inadvertent.  The testimony and documents show that prior to, during, and after the school district decision to reject the request, the student was receiving the services provided within her 504 Plan to address the student's inattentiveness and disorganization. Counsel for the parent has failed to provide any evidence that the seven day delay impeded this student's right to a FAPE, impeded the parent's opportunity to participate in the decision-making process or deprived the student of an educational benefit.  The seven-day delay did not rise to the level of a procedural violation of IDEA.

At the hearing, counsel for the parent asserted that the reasons given by the school district for the denial of the parent's request for an evaluation were substantively incorrect.  April Terry provided the parent with the required notice of the school district's decision in her letter of October27, 2006.  On its face, the letter contains (a) a description of the action refused by the school district; (b) an explanation of why the school district refused to evaluate the student and a description of each evaluation procedure, assessment, record or report the school district used as a basis for the refused action; (c) enclosure of the Explanation of Procedural Safeguards and (d) contact information for Ms. Terry.  The letter dated October 27, 2006 complied in all respects with Section 1415(c) of IDEA.  In light of all of the evidence surrounding the student's history including the absences in 4th grade, the reports by the student's 4th and 5th grade teachers, the academic screening and the recent evaluation at the end of 3rd grade, the school district's decision not to evaluate seemed to this hearing officer to be entirely reasonable.  See *Krista P. v. Manhattan School Dist.*, 255 F.Supp.2d 873 (N.D.Ill 2003) where a school district's refusal to conduct an evaluation of a student receiving services under a Section 504 Plan was found to be substantively sound.  In *Krista P.*, the court found that the district had "utilized data and procedures such as 'observation of the child, assessment for instructional purposes, consultation with the teacher or other referring agent, and a conference with the child' in making its determination. 23 Ill.Admin.Code §226.110(c)". *Krista P., supra*, at 886.  The school district concluded that the student's Section 504 services met the student's needs and declined to evaluate.  In the instant case, the school district's decision was strikingly similar – no necessity for an evaluation accompanied by a conclusion that the then existing Section 504 Plan was meeting the student's needs.  See also, *Rockford Public School District 205,* Case No. 2870, SEA IL 2002)

The parent's focus on the school district's seven day delay seems peculiar in light of the subsequent events: the parent's delay in making herself available for a domain meeting until February 8, 2007 and her subsequent delay in consenting to the special education services until August 2007.  Counsel for the

school district asserts that "one can only conclude that the Parent believed that the Student's Section 504 Plan was adequate to meet her needs". This hearing officer concurs.

The parent's focus then shifts to her meeting with April Terry and Nancy Spangler on November 21, 2006. At the end of that meeting, the parent made a second request for an evaluation. Despite her testimony that she had participated in a prior evaluation and was familiar with the concept of a domain meeting and the consent for evaluation component of a domain meeting, the parent now insists that she provided the necessary consent on November 21, 2006 and the 60-day clock started to tick. This component of the parent's due process complaint is patently absurd, particularly in light of the provisions of IDEA regarding the concept of "informed written consent". These provisions codified and made clear that "consent" means that the parent has been fully informed of all information relevant to the evaluation, the parent understands and agrees in writing to the carrying out of the evaluation and the consent describes that activity and lists the records that will be released and to whom. 34 CFR 300.9. On its face, the parent's letter of November 21, 2006 lacks the specificity required by IDEA. On its face, the consent finally signed by the parent on February 15, 2007 complied in all respects with IDEA. The parent's assertion that she believed that she had provided her "consent" and that the evaluation would start in January 2007 is contradicted by her assertion that she had no idea why the school district would ask her to "consent" a second time in February 2007. Counsel for the parent asserted that the parent was "unsophisticated". The evidence does not support this conclusion. The school district was entirely correct in its belief that it could not proceed with an evaluation of the student in the absence of informed written consent. That informed written consent was secured on February 15, 2007.

The parent's final claim is that she should be reimbursed for the cost of the Trude Reiser evaluation. The parent sought this evaluation in December 2006 and presented the document to the participants at the domain meeting on February 8, 2007. The school district's speech pathologist noted the instruments used and noted that the report confirmed what the school district had been doing for the student at school.

On April 11, 2007 an Individual Education Plan was developed for the student. That IEP contained some but not all of the classroom modifications recommended by Trude Reiser. It is also true that the IEP contained some but not all of the classroom modifications contained in the student's Section 504 Plan. There was no finding at the IEP meeting that the student had a central auditory processing disorder or deficit. In fact, this IEP was developed to address the student's disabling condition – attention deficit disorder, inattentive type. There was nothing contained within Trude Reiser's report which identified any educational need that had not already been identified by the school district. This hearing officer finds that there was no basis for the parent's assertion that the school district utilized Trude Reiser's report yet refused to pay for it.

In matters alleging a procedural violation, a hearing officer may find that a child did not receive a FAPE only if the procedural inadequacies (i) impeded the child's right to a FAPE; (ii) significantly impeded the parent's opportunity to participate in the decision making process regarding the provision of a FAPE to the parent's child; or caused a deprivation of educational benefit. 34 CFR 300.513(a)(2) The evidence supports a conclusion that the student received the accommodations of her Section 504 Plan from October 10, 2006 through April 11, 2007. There was no evidence presented whatsoever in support of her contention that the student received no educational benefits under the Section 504 Plan.

This hearing officer find that the school district's denial of an evaluation was appropriate. The hearing officer further finds that the school district completed its evaluation within sixty (60) days of the date it received informed written consent from the mother of the student. Finally, while the school district reviewed Trude Reiser's auditory processing evaluation, it was not considered to the extent that the parent should be reimbursed.

The school district has met its burden of proof that at all times relevant it properly identified the nature and severity of the student's suspected disabilities and that the 504 Plans and the Individual Education Plan developed on April 11, 2007 offered the student a free appropriate public education in the least restrictive environment, consistent with procedural safeguards.

## DECISION

IT IS HEREBY ORDERED that the parent failed to provide sufficient and compelling evidence that the school district violated the procedural or substantive rights of the student or her mother and consequently all requests for relief are denied.

## RIGHT TO REQUEST CLARIFICATION

Either party may request clarification of this decision by submitting a written request for such clarification to the undersigned hearing officer within five (5) days of receipt of this decision. The request for clarification shall specify the portions of the decision for which clarification is sought and a copy of the request shall be mailed to the party and to the Illinois State Board of Education, Program Compliance Division, 100 North First Street, Springfield, Illinois 62777. The right to request such a clarification does not permit a party to request reconsideration of the decision itself and the hearing officer is not authorized to entertain a request for reconsideration. **THE EFFECTIVE DATE OF THIS DECISION IS THE DATE OF RECEIPT OF ANY CLARIFICATION OF THIS DECISION.**

## RIGHT TO FILE A CIVIL ACTION

This decision shall be binding upon the parties unless a civil action is commenced. Any party to this hearing aggrieved by this decision has the right to commence a civil action with respect to the issues presented in the hearing. Pursuant to ILCS 5/14-8.01(i), that civil action shall be brought in any court of competent jurisdiction within 120 days after a copy of this decision was mailed to a party.

ISSUED this 4th day of June 2008.


------------------------------

CAROLYN ANN SMARON
Impartial Due Process Hearing Officer

## CERTIFICATE AND AFFIDAVIT OF DELIVERY

The undersigned hereby certifies that a copy of the Decision and Order was mailed to the following parties, via certified mail:

Mr. Joseph Daniel Thomas
Attorney at Law
10192 North 600 East
Demotte, Indiana 46310-8528

Ms. Jennifer L. Bollero
Attorney at Law
2215 York Road #206
Oak Brook, Illinois 60523

Mr. Andrew Eulass
Due Process Coordinator
Illinois State Board of Education
100 North First Street
Springfield, IL 62777-0001

on June 4, 2008.

_____

Carolyn Ann Smaron
Due Process Hearing Officer
635 Argyle Avenue
Flossmoor, Illinois 60422
708 798 0966 (facsimile 708 798 3430)
smaron@sbcglobal.net

# Sraga, Engler and Boyle, L.L.C.

EXHIBIT 2

2215 York Road - Suite 206
Oak Brook, IL 60523-2392
Telephone: 630-928-1200
Facsimile: 630-928-1300

Alan T. Sraga
Teri E. Engler
Daniel M. Boyle

August 28, 2007

Jennifer L. Bollero
Cynthia M. Baasten

**SENT BY FACSIMILE (#708/798-3430) AND MAIL**

Ms. Carolyn Ann Smaron
Impartial Hearing Officer
635 Argyle Avenue
Flossmoor, Illinois 60422

Re:     School District 86/B█████ H███████
        ISBE Case No. 2007-0268

Dear Ms. Smaron:

Upon further reflection and in order to conserve the substantial additional taxpayer resources that would be expended in moving forward with this litigation, the School District has elected to and hereby withdraws its due process request in the above-referenced matter. We understand that, pursuant to 105 ILCS 5/14-8.02a(f-5), you will retain jurisdiction over any subsequent hearing that involves these parties that may be requested within one year of today's date.

By copy of this letter to Mr. Thomas, I am asking him to contact me to (1) discuss the process for the School District's payment for the independent educational evaluation that Ms. H█████ obtained through Dr. Lorber; and (2) confirm his client's availability to attend the IEP conference that has been scheduled by the School District to review and consider parent-obtained private evaluation reports.

Very truly yours,

SRAGA, ENGLER and BOYLE, L.L.C.

JENNIFER L. BOLLERO

JLB:tam
cc:     Mr. Joseph Daniel Thomas, Esq. (via facsimile and mail)
        Dr. Phyllis M. Wilson, Superintendent of Schools, School District 86
        Dr. Sandra Thomas, Director of Special Services, School District 86

S:\School District\sd86w\ltr\smaron02.5.doc

## ILLINOIS STATE BOARD OF EDUCATION
## IMPARTIAL DUE PROCESS HEARING

EXHIBIT 3

IN THE MATTER OF THE SPECIAL
EDUCATION OF:

B████████ H████████

AND

JOLIET SCHOOL DISTRICT 86

)
)
)
)
)
)
)
)
)
)
)
)

ISBE # 2007-268

**CAROLYN ANN SMARON**
**Impartial Hearing Officer**

### FINAL DISPOSITION ORDER

Matters in the above referenced case, filed by the school district on 5/18/07 were concluded on 8/28/07. Final action on the case was:

(check appropriate boxes)

☐ Issuance of Written Decision and Order by Hearing Officer

● Request for Due Process Withdrawn on 8/28/07

> **The Hearing Officer retains jurisdiction over a subsequent hearing that involves the same parties and is requested within one year from the date of withdrawal of the previous request unless the Hearing Officer is unavailable. 105 ILCS 5/14-8.02a(f). The parties retain their right to request a hearing in the future, consistent with the above statute.**

☐ Settlement Via Mediation - Written Agreement

☐ Settlement Via Mediation - No Written Agreement

☐ Settlement by Parties - Written Agreement

☐ Settlement by Parties - No Written Agreement

☐ Dismissed By Hearing Officer for Lack of Prosecution

☐ Dismissed by Hearing Officer for Failure to State an Actionable Request.

☐ Other _____

Date: 8-28-07

**CAROLYN ANN SMARON**
**Due Process Hearing Officer**

SPECIAL EDUCATION DUE PROCESS HEARING        EXHIBIT 4
ILLINOIS STATE BOARD OF EDUCATION

| | | |
|---|---|---|
| Joliet Public School District 86, | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| vs. | ) | **Case No: 2008-0245** |
| | ) | **(Orig. No. 2007-0268)** |
| B█████ H██████, by her Parent and Next | ) | |
| Friend, S████ H██████, and Each One | ) | |
| Individually, | ) | |
| | ) | |
| **Respondents,** | ) | |

**Carolyn Ann Smaron, Hearing Officer**

<u>**AMENDED COMPLAINT**</u>

　　　NOW COME the current Petitioners, B█████ H██████, by her Parent and Next Friend, S████ H██████, and Each One Individually, and amend their complaint to include new issues, and to include old issues contained in the Mother's Original Complaint filed in ISBE Case No. 2007-0268, against Joliet Public School District 86 ("District") pursuant to IDEA as amended and 23 IAC 226.660 and say as follows.

## RENEWAL OF OLD ISSUES IN ISBE NO 2007-0268

### Issue No. 1: Improper Written Notice of Decision on Second CSE Request

The District provided improper notice to the Mother regarding her written request and consent for a Case Study Evaluation ("CSE") according to the terms of 34 CFR 300.503 which required it within 10 days after the Mother handed her second CSE request to the District on November 21, 2006.

**Facts:**
This District's violation of the regulation on prior written notice was complete as a violation of procedural safeguards on the first day after the lapse of 10 days past November 21, 2006, or December 2, 2006.

This harmed the Mother and B█████ by denial of the Mother's right to participate in the formulation of FAPE and by denial of the rights of B█████ and the Mother to FAPE and educational opportunity for B█████.

This also harmed the Mother because the failure to respond in a timely fashion required the Mother to obtain an outside education evaluation from Trude Reiser at the Children

1

and Family Hearing Associates for an auditory processing evaluation that cost her $300 plus transportation from Joliet, IL to Peoria, IL.

**Issue No. 1 Relief Sought:**
The relief sought for this violation of the procedural safeguards of the Mother and Brittany is:

a.) That the IHO issue a finding that the District violated the procedural safeguards of the Mother and Brittany, and

b.) That the IHO order the District to provide compensatory education for B██████.

c.) That the IHO order the District to reimburse the Mother for mileage plus the $300 cost for the auditory processing evaluation by Trude Reiser.

d.) That the IHO order such other relief as justice requires.

**Issue No. 2: Failure to Complete CSE in Timely Fashion**

The District violated 34 CFR 300.300 through 300.304 by failing to complete the CSE within 60 calendar days from the Mother's written consent and request for a CSE submitted on November 21, 2006.

**Facts:**
This violation was complete on the first day after 60 days past November 21, 2006, or on January 21, 2007.

The Mother was harmed by denial of opportunity to participate in the formulation of FAPE by this violation. The Mother and B██████ were harmed by denial of their rights to FAPE and educational opportunity for B██████ by this violation.

The Mother was also harmed by this violation because she had to drive from Joliet, IL to Peoria, IL and pay for a $300 outside auditory processing evaluation by Trude Reiser when the District failed to evaluate B██████ in a timely fashion.

To date the District has not formally reviewed or considered this auditory processing evaluation at an IEP meeting with the Mother to date.

**Issue No. 2 Relief Sought:**
The relief sought is:

a.) That the IHO make a finding that the District violated the procedural safeguards of the Mother and Brittany, and

b.) That the IHO order compensatory education for B██████.

2

c.) That the IHO order the District to reimburse the Mother for the mileage and $300 cost for the auditory processing evaluation by Trude Reiser

d.) That the IHO order the District to convene an IEP meeting to review and consider the auditory processing evaluation.

e.) That the IHO order such further relief as justice requires.

**NEW ISSUES**

**Issue No. 3: Improper Written Notice of Decision on First CSE Request**

The District failed to provide a written notice of its decision according to the terms of 34 CFR 300.503 within 10 days after the Mother handed the District a written consent and request for a Case Study Evaluation on October 10, 2006.

**Facts:**
This District's violation of the regulation on prior written notice was complete as a violation of procedural safeguards 10 days past October 10, 2006 or on October 21, 2006.

This harmed the Mother and B██████ by denial of the Mother's right to participate in the formulation of FAPE and by denial of the rights of B██████ and the Mother to FAPE and educational opportunity for B██████.

The relief sought for this violation of the procedural safeguards of the Mother and B██████ is:

a.) That the IHO find that the District violated the procedural safeguards of the Mother and B██████, and

b.) That the IHO order the District to provide compensatory education for B██████.

c.) That the IHO order such other relief as justice requires.

**Issue No. 4: District Refusal to Convene IEP Meeting after School Hours**

The District violated the procedural rights of the Mother under IDEA by refusing to convene an IEP Meeting at a mutually convenient time after school hours to allow Dr. Rudy Lorber to participate by phone after his work hours.

By barring IEP Meetings at the very hours in which Dr. Lorber is available to participate by phone, the District is violating IDEA as interpreted by ISBE. *ISBE Special Education Policies & Procedures*, p. 41 A(1); p. 47 E(4).

This refusal also violates §504 of the Rehabilitation Act and parallel provisions of the ADA.

While the IHO has already ruled that the District was not required to meet after business hours, the Mother and B████ have a good faith basis to believe that his refusal violates existing law, and is a valid issue for due process hearing.

Further, the Mother and B████ believe that this issue is a matter of public interest because denial of after school hour IEP Meetings limits working parents from participating in the formulation of FAPE. They believe that it must be litigated fully to vindicate the public interest, especially the public interest of students with disabilities and their families.

**Facts:**
This has harmed the Mother and B████ by depriving the Mother of an opportunity to participate in the formulation of FAPE, and by depriving the Mother and B████ of an educational opportunity and FAPE for B████.

Ms. Bollero, attorney for the District, has formally refused the Mother's offer to meet at a mutually agreeable time for the IEP Meeting that allows the Student's evaluator, Dr. Lorber, to participate by phone after he finishes work on the West Coast.

Unfortunately, the District has repeatedly denied the Parent's offers, instead insisting on its own schedule. The District's requirement that the IEP Meeting be finished by 3:00 pm is not helpful in this regard because the District has been told that Dr. Lorber is unavailable at that time.

The Parent is not an educator and needs Dr. Lorber at this IEP Meeting to interpret his lengthy evaluation report on the Student. He has informed us that his new job as a public school district psychologist makes it necessary for him to participate by phone outside normal school day hours in his time zone (PST). It is not fair for the District to require Dr. Lorber to risk his new position at a public school district by being absent from work in order to participate in an IEP Meeting. Absenteeism by new hires is not looked upon by hiring authorities as a good thing.

The Mother and B████ require equal access to meeting times after normal school day hours for parents of children with disabilities just as the District allows for parents of children in the general education program at the District. Although the District claims that no such meetings are conducted for the general education program parents, this is not true, making the District's demand for Dr. Lorber to be absent from work completely unnecessary.

On May 15, 2007 and June 14, 2007, the Parent obtained a neuropsychological evaluation from Dr. Rudy Lorber that identified several deficits that adversely affect the Student's education.

4

Dr. Lorber's evaluation Report is almost 40 pages and made many recommendations for the Student's educational programming, but these have not been reviewed at an IEP Meeting or incorporated into an IEP for the Student.

The IEP Meeting to review IDEA requires the IEP Team to review an outside evaluation soon after the District receives a copy of the report.

Since the District's withdrawal of its Complaint, the Parent has cooperated with the District to arrange a mutually convenient time and date to conduct an IEP Meeting to review Dr. Lorber's Report and develop a new IEP for the Student.

The Parent has emphasized in correspondence with the District that Dr. Lorber's involvement is essential for the Parent to participate in the formulation of FAPE at such an IEP Meeting. The Parent is not an educator or a neuropsychologist, and she cannot properly interpret the very lengthy, technical report of Dr. Lorber's evaluation without his assistance.

The Parent has also emphasized that to secure Dr. Lorber's participation by phone, the IEP Meeting must be convened at a time and date that he can participate without interfering with his new job as a school district psychologist.

His new job has taken Dr. Lorber to the west coast of the U.S. in the Pacific Standard Time Zone (PST) that adds two hours to the nominal Central Standard Time in Joliet, Illinois of a phone call from the District to him. If he gets home from work about 4:30 pm each school day in Washington State, that would mean the earliest time he is available by phone is about 6:30 pm Joliet time (CST).

On October 3, 2007 in a corrected letter, the District reiterated its position limiting IEP Meetings to "regular school hours" which effectively excludes Dr. Lorber from assisting the Parent to participate in the formulation of FAPE. The District has insisted that the IEP Meeting must be finished by 3:00 pm.

In this letter, the District even rejected an alternative offer by the Parent to assist mutual scheduling. The Parent had suggested that if the District wanted to schedule the meeting during regular school hours, the Parent would agree if the District paid for another neuropsychologist of the Parent's own choosing to participate to assist her at that meeting. The District refused.

In this same letter, the District asserted its intent to have its own outside expert attend the IEP Meeting over the Parent's objections. Said outside District expert has never previously been involved in the Student's evaluation or education. He is unknown to the Parent and has no consent from the Parent to view the Student's educational records.

The Mother believes that the District intended to use their outside expert to provide additional weight to its interpretation of the evaluation during the IEP Meeting to the disadvantage of the Parent, while denying Dr. Lorber's access to the IEP Meeting.

5

in this same letter, the District claimed "the School District has no obligation under IDEA to meet outside of regular school hours at all, much less accommodate Dr. Lorber and his move to Washington."

Ironically, on or about October 4, 2007, the District sent a general notice to all Parents of students in the Student's school that listed the times outside of "regular school hours" that the District could meet with Parents on matters outside special education matters in "Parent Conferences."

The ISBE's own Policies and Procedures Manual states that IEP Meetings are typically convened before or after school as the ISBE's interpretation of 34 CFR 300.345 & 23 IAC 226.530 that after school meetings are typical and therefore acceptable to require where needed by the Parent.

The requirement that the Parent's expert be allowed to participate in the IEP Meeting to assist the Parent's understanding is a reasonable basis to require after school hours to conduct this IEP Meeting.

By restricting the hours allowed for IEP Meetings to those during which the Parent's neuropsychologist is not available to participate, the District is showing bad faith and breaking its written commitment to the IHO in its withdrawal of its Complaint.

By inviting its own outside expert to attend the IEP Meeting, but denying the Parent the participation of her own expert who actually has met and evaluated the Student, the District has denied the Parent as an IEP Team member equal participation in the formulation of FAPE for the Student.

**Issue No. 4 Relief Sought:**
The relief sought for this violation of the Mother and B████ rights is:

a.) That the IHO find that the District must agree to mutually convenient times for an IEP Meeting at those times during which Dr. Lorber is available to participate by phone without disrupting or endangering his new job as a public school psychologist,

b.) That the IHO issue a finding that the District has engaged in disability discrimination against the Mother and B████.

c.) That the IHO make any other findings or orders that justice requires.

**Issue No. 5: Deliberate Deception about Legal Requirements for Eligibility and Evaluation under IDEA.**

The District violated IDEA's procedural safeguards by deliberately or recklessly misrepresenting the legal conditions required for obtaining an evaluation and to be considered for eligibility for special education.

6

The District also violated §504 of the Rehabilitation Act also found at 34 CFR 104.4(b) and the parallel provisions of the ADA when as a recipient of federal funds and a public agency it deliberately or recklessly misstated in writing the requirements for special education evaluation and eligibility. Thereby, the District violated these laws for several reasons.

The District Denied B█████ as a student with a disability the opportunity to participate in or benefit from an aid, benefit, or service which is afforded nondisabled students (e.g., denial of opportunity to be considered for eligibility for special education); and

The District failed to afford B█████ an opportunity to participate in or benefit from the aid, benefit, or service that is equal to that afforded others (e.g., denial of educational evaluation of disabilities); and

The District failed to provide aids, benefits, or services to a student with a disability that are as effective as those provided to a nondisabled student (e.g., relegating a student to a 504 Plan rather than an IEP).

Further, the Mother and B█████ believe that this issue is a matter of public interest because denial of after school hour IEP Meetings limits working parents from participating in the formulation of FAPE, and because it is a gross example of disability discrimination. They believe that it must be litigated fully to vindicate the public interest, especially the public interest of students with disabilities and their families.

**Facts:**

On May 10, 2005, although B█████ had previously been eligible for special education due to her speech and language deficits, the District ruled her ineligible and put her on a 504 program.

During the 2005-2006, B█████ was absent from school for illness on about 30 school days. During the spring of 2006, B█████'s ISAT scores were below Illinois standards in reading and science.

On October 10, 2006, the Mother made a written request for a CSE for B█████ with written consent because B█████ was struggling in school.

On October 27, 2006, the District refused in writing to conduct a CSE for B█████. Although the District acknowledged that B█████ was struggling in the classroom, it nevertheless claimed in writing that B█████ was ineligible for special education because "*B█████'s poor attendance last year excludes her from being tested or even made eligible for special education services.*"

The Mother was ignorant about the law at this time. During this time, B█████ continued to struggle in the classroom without special education services.

Subsequently the Mother drove B████ from Joliet, IL to Peoria, IL to have an auditory processing evaluation conducted because the District had not done so. This cost travel expenses and $300 for the evaluation. Ms. Reiser's Children and Family Hearing Associates determined that Brittany has mildly delayed auditory decoding skills and mildly delayed auditory closure skills and provided a long list of recommendations for Brittany.

Subsequently, the District admitted that B████could be evaluated, and ultimately determined that she was eligible for special education.

**Issue No. 5 Relief Sought:**
The relief sought for these violations of law against the Mother and B████ is:

　　a.) That the IHO issue a finding that the District violated the procedural safeguards of the Mother and B████,

　　b.) That the IHO issue a finding that the District intentionally or recklessly violated the §504 of the Rehabilitation Act and parallel provisions of the ADA in its discrimination against the Mother and B████,

　　c.) That the IHO order compensatory education, and

　　d.) That the IHO order such other relief as justice requires.

**Issue No. 6: Retaliation**

The District violated the procedural safeguards under IDEA and violated Section 504 and the parallel provision of the ADA by retaliating against the Mother and B████ for their disability rights advocacy.

**Facts:**

This occurred after the Mother repeatedly inquired about, and/or requested orally and in writing a CSE and special education eligibility redetermination of B████ and after Brittany engaged in self-advocacy regarding her schooling.

The District took the adverse action of writing a letter that intentionally or recklessly misrepresented the legal requirements for evaluation and eligibility determination under IDEA. The Mother was ignorant about the law at the time of receiving this letter and this letter delayed the evaluation and eligibility determination of B████ for special education until April 11, 2007.

**Issue No. 6 Relief Sought:**
The relief sought is

a.) That the IHO issue a finding that the District violated the procedural safeguards of the Mother and █████.

b.) That the IHO issue a finding that the District violated the § 504 of the Rehabilitation Act and the ADA by retaliating against the Mother and B█████ for their disability rights advocacy.

c.) That the IHO order compensatory education.

d.) That the IHO order such other relief as justice allows.


Respectfully submitted,


1/11/08_____                                  s/ Joseph Daniel Thomas
Date                                           Name of Attorney

Joseph Daniel Thomas, Attorney at Law
10707 N. State Road 55, Demotte, IN  46310-9671
ARDC No. 6212202
312.296.8203   219.345.5444
Fax 800.882.3714
thomaslaw@netnitco.net

**CERTIFICATE AND AFFIDAVIT OF DELIVERY BY MAIL**

The undersigned hereby certifies that a copy of this document in the U.S. Mail with first class postage prepaid and directed to:

Carolyn Ann Smaron
Due Process Hearing Officer
635 Argyle Avenue
Flossmoor, Illinois 60422

Jennifer L. Bollero, Esq.
Sraga, Engler and Boyle, LLC
2215 York Road – Suite 206
Oak Brook, IL 60523-2392
jbollero@sragaenglerboyle.com

Dated on 1/11/08

_____
s/ Joseph Daniel Thomas
Attorney for Petitioners

Joseph Daniel Thomas, Attorney at Law
10707 N. State Road 55, Demotte, IN 46310-9671
ARDC No. 6212202
312.296.8203  219.345.5444
Fax 800.882.3714
thomaslaw@netnitco.net

# Sraga, Engler and Boyle, L.L.C.

EXHIBIT 5

2215 York Road - Suite 206
Oak Brook, Illinois 60523-2392
630-928-1200
Facsimile 630-928-1300

## FACSIMILE TRANSMITTAL SHEET

DATE:    October 3, 2007                    TIME:    6:35 p.m.

### PLEASE DELIVER THE FOLLOWING PAGE(S) TO:

TO:        Joseph Daniel Thomas

COMPANY:    Attorney At Law

FAX NO.:    (800) 882-3714

FROM:      Jennifer L. Bollero

NUMBER OF PAGES INCLUDING THIS SHEET: 3

If you do not receive all pages or if they are not legible, please contact ___Nancy___ immediately at (630) 928-1200.

MESSAGE:      RE:  Joliet Public School District No. 86/BH

Transmitted herewith is my correspondence to you dated October 3, 2007 regarding the above matter.

NOTE: THIS MESSAGE SENT BY ELECTRONIC FACSIMILE TRANSMISSION ("THE MESSAGE") IS INTENDED AND RESTRICTED FOR THE USE OF ADDRESSEE ONLY. THE MESSAGE MAY CONTAIN CONFIDENTIAL AND PRIVILEGED INFORMATION, EXEMPT FROM DISCLOSURE UNDER FEDERAL AND/OR STATE LAW. IN THE EVENT SOME OTHER PERSON OR ENTITY RECEIVES THE MESSAGE, SAID RECIPIENT IS HEREBY NOTIFIED THAT ANY DISSEMINATION, REGARDING TRANSMISSION, DISTRIBUTION OR DUPLICATION OF THE MESSAGE IS PROHIBITED. IN THE EVENT THE MESSAGE IS RECEIVED FROM A PERSON OR ENTITY OTHER THAN THE SPECIFIED RECIPIENT OR THE RECIPIENT'S AGENT, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, COLLECT, AND RETURN THE ENTIRETY OF THE MESSAGE BY U.S. MAIL.

# Sraga, Engler and Boyle, L.L.C.

2215 York Road - Suite 206
Oak Brook, IL 60523-2392
Telephone: 630-928-1200
Facsimile: 630-928-1300

Alan T. Sraga
Teri E. Engler
Daniel M. Boyle

Jennifer L. Bollero
Cynthia M. Baasten

October 3, 2007

**SENT VIA FACSIMILE (800-882-3714) AND MAIL**

Joseph Daniel Thomas, Esq.
10707 North State Road 55
Demotte, Indiana 46310-9671

Re:   Joliet Public School District No. 86/B████ H████

Dear Mr. Thomas:

The School District's position regarding the IEP conference, as stated in my September 19, 2007 correspondence, has not changed.

Applicable federal and State regulations require that the IEP conference be scheduled at a mutually agreed time and place. However, the School District has no obligation under the *IDEA* to meet outside of regular school hours at all, much less to accommodate Dr. Lorber and his move to Washington. The School District remains open to working with you in the hopes of selecting a mutually agreed time and place, and to that end the District continues to offer the following:

| | |
|---|---|
| October 3, 2007 | 10:00 a.m. |
| October 11, 2007 | Any time during the District 86 school day |
| October 16, 2007 | Any time during the District 86 school day |
| October 17, 2007 | Any time during the District 86 school day ( but ending no later than 3:00 p.m.) |

Regarding the IEP conference participants, Ms. H████ remains free to invite Dr. Lorber or any other individual whom she believes has knowledge or special expertise regarding B█████; however, the School District has no obligation to and will not pay for Dr. Lorber or any other "evaluator of her choosing" to attend. Insofar as Dr. Joseph is concerned, he is a consulting psychologist for School District 86 and, as per my previous correspondence, a member of B████'s IEP team. As such, Dr. Joseph is a school official with a legitimate educational interest in Brittany and the School District may properly disclose Brittany's school student record information to him in furtherance of that interest.

We hope that you/your client will cooperate in scheduling the IEP conference without further delay.

Joseph Daniel Thomas, Esq.
October 3, 2007
Page - 2 -

Very truly yours,

SRAGA, ENGLER and BOYLE, L.L.C.

JENNIFER L. BOLLERO

JLB:mm
cc:    Dr. Sandra Thomas, Director of Special Services, School District 86

n\sd086m\llc\jdthomas02.2