

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

B.H., minor student, by her Mother and )
Next Friend, S.H., and Both Individually, )
)                              08 C 4974
    Plaintiffs, )
)
    v. )                              Hon. Charles R. Norgle
)
JOLIET SCHOOL DISTRICT No. 86, )
)
    Defendant. )

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court are the Plaintiffs' Motion for Summary Judgment and the Defendant's

Amended Motion for Summary Judgment. For the following reasons, Plaintiffs' Motion is

denied in its entirety, and Defendant's Motion is granted in its entirety.

## I. INTRODUCTION

Plaintiffs are B.H., a student in the Defendant Joliet School District No. 86 ("District

86"), and B.H.'s mother S.H. They bring suit pursuant to section 504 of the Rehabilitation Act

("Section 504" or the "RA"), and the Individuals with Disabilities Education Act (the "IDEA").

Section 504 prohibits discrimination against individuals with disabilities by any program

receiving federal financial assistance, including local school districts. 29 U.S.C. § 794; Wis.

Cmty. Servs. v. City of Milwaukee, 465 F.3d 737, 746 (7th Cir. 2006). The IDEA requires a

school district accepting federal funds to provide disabled children within the district a "free

appropriate public education" ("FAPE"). 20 U.S.C. §§ 1400(d)(1)(A); 1412(a)(1)(A); Bd. of

1

Educ. of La Grange Sch. Dist. No. 105 v. Ill. State Bd. of Educ., 184 F.3d 912, 915 (7th Cir.

1999). In furtherance of the mandated goal of providing FAPEs to disabled students, the IDEA

requires school districts to create an Individualized Education Plan ("IEP") specifically tailored

to each disabled child's unique needs. 20 U.S.C. § 1412(a)(4); Hjortness v. Neenah Joint Sch.

Dist., 507 F.3d 1060, 1064 (7th Cir. 2007). Parents dissatisfied with their child's IEP may

request a state administrative due process hearing before an Independent Hearing Officer

("IHO"). 20 U.S.C. § 1415(f). Parents dissatisfied with the outcome of administrative

proceedings may appeal to either state court or the federal district court. Id. at § 1415(i)(2).

## II. BACKGROUND

### A. Facts[1]

In the fall of 2008, B.H. was a thirteen year old student in the 6th grade at District 86.

The parties agree that B.H. suffers from attention deficit disorder ("ADD"), a disability as that

term is defined by the IDEA, 20 U.S.C. § 1400 et seq., and related Illinois law. Plaintiffs assert

that B.H. also suffers from a learning disability and hearing loss.

At some point during the spring of the 2004-2005 school year, District 86 notified S.H.

that B.H., then in the 3rd grade, was struggling in class. District 86 invited S.H. to attend a

parent-teacher conference on March 16, 2005. S.H., B.H.'s grandmother, school psychologist

April Terry ("Terry"), school social worker Mary McGuire ("McGuire"), and B.H.'s teacher

attended this conference, and agreed that B.H. should be evaluated in order to determine whether

---

[1] The Court takes the facts from the parties' Local Rule 56.1 Statements, and notes
disputed facts within the body of this Opinion. Additional facts are taken from the June 4, 2008
Decision and Order of Carolyn Ann Smaron, Impartial Due Process Hearing Officer for the
Illinois State Board of Education ("Decision and Order").

B.H. was eligible for special education and related services. District 86 officials scheduled a meeting for May 10, 2005 to discuss the results of this evaluation.

S.H., B.H.'s grandmother, Terry, McGuire, a school nurse, and other District 86 representatives attended the May 10, 2005 meeting. Terry indicated that B.H.'s Cognitive Assessment System score was in the tenth percentile for children her age, but that her scores on the Woodcock-Johnson Achievement Tests indicated that her academic abilities were in the average range. Terry also noted that B.H. had received speech services in the past, but B.H. was presently able to communicate effectively. The school nurse reported that B.H. passed a hearing exam, and noted that no one had raised any concerns about B.H.'s hearing. The nurse also reported that B.H. was under the care of a physician for ADD, and had made significant improvements through medication. McGuire explained that she had been working with B.H. for approximately a year on B.H.'s social and behavioral problems, and that these problems had been largely eliminated since B.H. began taking medication for her ADD. Taking all these factors into consideration, the participants at the May 10, 2005 meeting concluded that B.H. was ineligible for special education. The meeting participants, however, agreed to reconvene at the beginning of B.H.'s 4th grade school year to determine whether she was eligible for an education plan designed to accommodate her impairments within the mainstream learning environment. These plans are commonly known as "Section 504 Plans." See 29 U.S.C. § 794; http://specialchildren.about.com/od/504s/f/ 504faq1.htm.

In September 2005, S.H. and District 86 officials met and agreed to create and implement a Section 504 Plan that called for specialized teaching strategies to be implemented on B.H.'s behalf. District 86 officials reviewed the Plan with S.H. and B.H. on November 1, 2005. The

3

Plan was apparently unsuccessful, due at least in part to the fact that B.H. missed thirty days of school during the 2005-2006 school year. Nineteen of these absences occurred in the third academic quarter, during which B.H.'s grades dropped significantly. On April 19, 2006, S.H. gave her consent to the modification of B.H.'s Section 504 Plan. District 86 modified B.H.'s 504 Plan for her 5th grade year in October 2006 to further accommodate B.H.'s needs. S.H. consented to these modifications, but also requested that B.H. be evaluated again by District 86 for special education eligibility.

In response to S.H.'s request, Terry reviewed B.H.'s academic record, and spoke with B.H.'s teachers, social worker, and speech pathologist. Terry determined that B.H.'s classroom problems stemmed primarily from her excessive absences, and advised S.H. that another special education evaluation would therefore not be conducted. On November 21, 2006, however, S.H., accompanied by someone the record refers to as "an advocate," met with Terry and Terry's supervisor Nancy Spangler ("Spangler"). S.H. and her advocate repeated their request for B.H. to be reevaluated for special education. District 86 relented, and scheduled what the record refers to as a "domain meeting" for January 9, 2007. District 86 rescheduled the meeting, at S.H.'s request, to February 8, 2007.

In the interim, S.H. obtained an independent hearing evaluation for B.H. from audiologist Trude Reiser ("Reiser"). Reiser concluded, *inter alia*, that B.H. suffered from mild hearing problems that could cause her to become confused when quickly presented with new oral information, and to experience difficulty remembering what she heard. Reiser also noticed that during testing, B.H. seemed to track visual stimuli from right to left instead of left to right, and skipped words or complete lines when reading. S.H. also obtained an independent evaluation of

4

B.H. from a Dr. Rudy Lorber ("Lorber") at some point during 2006. Lorber's Neuropsychological Evaluation Report recommended that B.H. undergo a central auditory process evaluation.

At the February 8, 2007 domain meeting, District 86's speech pathologist P.J. Smith ("Smith") reviewed Reiser's report and assessments, and explained that Reiser's report was consistent with Smith's observation of B.H., which Smith conducted on January 29, 2007, and that Reiser's recommendations for B.H. had already been implemented in the classroom. Smith further indicated that Reiser's report confirmed that no further speech or language evaluations of B.H. were needed, and that B.H. had only minor hearing problems. The participants at the domain meeting concluded that B.H.'s general intelligence and academic performance required further evaluation, and S.H. provided written consent for this on February 15, 2007.

District 86 representatives and S.H. met on April 11, 2007 to discuss the results of this assessment. Terry, the school psychologist, reported that she tested B.H.'s intelligence using the Weschler Intelligence Scale for Children ("WISC"), which revealed that B.H.'s IQ was 80, within the "low average range of intellectual functioning," and at the ninth percentile of children her age. Terry also indicated that she followed up on comments in Reiser's report regarding B.H.'s "poor auditory memory skills" by administering specific subtests within the WISC. These subtests indicated that B.H.'s "working memory abilities" were borderline, and that her "speed of processing" skills were average. The WISC test results, Terry concluded, did not indicate that B.H. was disabled. Terry also evaluated B.H.'s academic skills using the Kaufman Test of Educational Achievement. B.H.'s scores on this test placed her in the Average range for language, and Low Average for math. McGuire, the school social worker, explained that she

5

reviewed B.H.'s records, interviewed her teacher and S.H., observed B.H. in the classroom, and concluded that there were no social, emotional, or behavioral concerns that were interfering with B.H.'s learning, and that B.H.'s "adaptive skills" were appropriate for her age. Finally, Smith reported that B.H. exhibited no difficulty in conversing at an age-appropriate level of competence. The meeting participants, however, agreed that B.H. suffered from a disability described as "moderate inattentiveness," which negatively affected her ability to learn. The participants also agreed that B.H.'s disability fell within the IDEA disability category of "other health impairment/attention deficit disorder."

As a result of the finding presented at the April 11, 2007 meeting, District 86 determined that certain teaching modifications should be made on B.H.'s behalf, most of which were already contained in B.H.'s 504 Plan. District 86 also decided that B.H. would receive special education services on a pullout basis for the remainder of her 5th grade year, but would be returned to mainstream education in 6th grade under the Regular Education Initiative.[2] For reasons not made clear in the record, S.H. did not provide consent for B.H. to receive special education services until August 2007.

_____

[2] A pullout special education system is one in which learning disabled students receive "the majority of their education in regular classes and receive special education and related services for less than a quarter of the school day," typically in separate special education resource rooms. Naomi Zigmond, et al., Special Education in Restructured Schools: Findings from Three Multi-Year Studies, New Horizons for Learning, at http://www.newhorizons.org/spneeds/inclusion/systems/jenkins.html. The Regular Education Initiative is an educational movement which advocates placing handicapped and disabled students completely into the mainstream classroom setting. William E. Davis, The Regular Education Initiative Debate: Its Promises and Problems, 55 EXCEPTIONAL CHILDREN 440, 440 (1989).

District 86 scheduled an IEP meeting for September 10, 2007 in order to, *inter alia*, discuss the evaluations S.H. had independently obtained for B.H.[3] S.H.'s attorney informed District 86 that S.H. was not available on that date, and requested that District 86 reschedule the meeting for either September 24, 25, or 26 at 6:30 p.m. District 86's attorney responded by advising S.H.'s attorney that, pursuant to federal regulations and Illinois law, District 86 was not obligated to hold IEP meetings after school hours. District 86 proposed four alternative dates in October and three alternative dates in November, with the meeting to be held during regular school hours. No IEP meeting ever took place, however, as S.H. continued to insist that the meeting take place during after-school hours, and District 86 continued to attempt to offer a date and time that would be agreeable to both parties.

## B. Administrative Proceedings

S.H. then made a formal request for an Independent Educational Evaluation ("IEE") of B.H. District 86, however, refused to pay for the IEE, and, on May 18, 2007, filed for an administrative due process hearing before an IHO in order to formally contest the need for an IEE at its expense. S.H. also filed a request for a due process hearing, asserting violations of the IDEA and related state law by District 86. District 86 then agreed to pay for the IEE that Dr. Lauber had conducted, and both parties withdrew their requests for due process hearings.

The IHO then issued a Final Disposition Order, dated August 28, 2007, confirming the dismissal of the case based on the apparent settlement of the parties. However, on November 11,

---

[3] 504 Plans fall under the rubric of the RA, and are designed to remove barriers disabled children face so that these students can freely participate in the mainstream educational process. http://specialchildren.about.com/od/504s/f/504faq2.htm. IEPs fall under the rubric of the IDEA, and are designed to offer disabled students specifically tailored educational services and assistance. Id.

7

2007, S.H. requested that the IHO reopen the case and order District 86 to hold an IEP meeting at 6:30 p.m. The IHO denied S.H.'s request on December 13, 2007. S.H. then filed an Amended Request for Due Process on January 11, 2008, asserting that District 86 violated Section 504, related provisions of the Americans with Disabilities Act ("ADA"), and the IDEA.

The IHO issued a Preliminary Order on February 13, 2008 that dismissed some of S.H.'s claims. First, the IHO determined that S.H.'s claim that District 86's refusal to convene an IEP meeting after school hours violated the IDEA was meritless. The IHO stated:

> In her response to the Motion to Dismiss the parent now asserts that because the IDEA requires that IEP meetings be conducted at mutually agreed times, it necessarily follows that the school district must convene an IEP meeting at any time convenient to the parent. Counsel for the parents apparently has missed the word "mutually" in the IDEA. The assertion that the school district acquiesce in the parent's demand is patently absurd.

Def.'s Resp. to Pls.' Am. Mot. for Supplemental Evidence, Ex. D, Prelim. Order Re Mot. to Dismiss, at 1. The Court notes that the parent and child in this matter are deserving of more respect than the tone of this ruling indicates. The IHO then explained that she had no jurisdiction to hear claims brought under the RA and the ADA. Id. at 4.

On February 21, 2008 the IHO issued a Prehearing Conference Report outlining the remaining issues, which were: (1) whether District 86 responded in a timely and sufficient manner to S.H.'s October 10, 2006 written request for evaluation; (2) whether District 86 completed an evaluation requested on November 21, 2006 within 60 school days, as required by the Illinois Administrative Code; and (3) whether S.H. was entitled to reimbursement from District 86 for B.H.'s private hearing evaluation. The IHO heard testimony over three days in March and April 2008. On the first day of these hearings, the IHO determined that Dr. Lorber's

8

report and testimony were not relevant to the issues presented. The IHO then heard testimony

from Terry, Smith, McGuire, Spangler, Reiser, S.H., and others.

The IHO issued a final Decision and Order on June 4, 2008. Before reciting the factual

background to the case, the IHO entered the following stipulation:

> Counsel for the parent stipulated at the prehearing conference that the parent had not
> raised the appropriateness of the April 11, 2007 Individual Education Plan in either
> the initial Request for Due Process or in the Amended Request for Due Process. No
> testimony or documents [were] allowed relating to the appropriateness of the April
> 11, 2007 Individualized Education Plan.

Decision and Order, at 4. In other words, Plaintiffs did not contest the appropriateness of B.H.'s

FAPE during the administrative proceedings, nor do they do so in the instant case.

As to the first issue presented, the IHO determined that although District 86 committed a

technical violation of the Illinois Administrative Code by responding to S.H.'s request seven

days after the statutory time frame had expired, this delay did not impede B.H.'s education or

interfere with S.H.'s opportunity to participate in the decision-making process regarding B.H.'s

education. Id. at 9. The IHO also determined that in light of B.H.'s excessive absences, District

86's decision not to evaluate B.H. for special education at that time was reasonable. Id. As to the

second issue, the IHO found that District 86 evaluated B.H. for special education in a timely

manner after S.H. gave informed written consent for the evaluation. Id. at 10. Finally, the IHO

determined that while District 86 did consider Reiser's hearing evaluation, it was not utilized to

such an extent that S.H. should be reimbursed. Id. The IHO therefore denied all of S.H.'s claims

for relief. Id. at 11.

9

## C. Procedural History in the District Court

Plaintiffs filed suit in the Northern District on September 2, 2008, pursuant to, *inter alia*, the IDEA and the RA. Count I of Plaintiffs' Complaint is a partial appeal of the IHO's June 4, 2008 Decision and Order. Count II seeks attorneys' fees and costs for the administrative proceedings, alleging that Plaintiffs are a prevailing party on a significant issue. Count III alleges that District 86 engaged in disability discrimination in violation of the RA when it refused to schedule an evening IEP meeting.

The parties agreed to dismiss the Illinois State Board of Education as a party on February 4, 2009. On February 23, 2009, B.H. filed a motion seeking to supplement the administrative record with additional evidence. The Court denied the motion, finding that much of the evidence that B.H. sought to discover was already included in the administrative record and that other evidence was not relevant. B.H. v. Joliet Sch. Dist. 86, No. 08-4974, 2009 U.S. Dist. LEXIS 38600 (N.D. Ill. April 30, 2009). The parties filed the instant Motions for Summary Judgment on June 16, 2009. The Motions are fully briefed and before the Court.

## III. DISCUSSION

### A. Standard of Decision

#### 1. Appeal of the IHO's Decision and Order

As the Court has indicated, Count I of Plaintiffs' Complaint is an appeal of the IHO's Decision and Order. When no additional evidence is presented in an appeal from an administrative decision, as is the case here, a motion for summary judgment "is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." Patricia P. v. Bd. of Educ. of Oak Park, 203 F.3d 462, 466 (7th Cir. 2000); Krista P. v.

10

Manhattan Sch. Dist., 255 F. Supp. 2d 873, 875 n.1 (N.D. Ill. 2003). The party challenging an administrative decision bears the burden of proof. Patricia P., 203 F.3d at 466-67. In reviewing IHO decisions, a court must "give due deference to the hearing officers' judgments." Morton Cmty. Unit Sch. Dist. No. 709 v. J.M., 152 F.3d 583, 578-88 (7th Cir. 1998). This Court therefore must defer to the IHO's decision if it is supported by "substantial evidence," and is free from "clear error." Sch. Dist. of Wis. Dells v. Littlegeorge, 295 F.3d 671, 674 (7th Cir. 2002).

## 2. *Summary Judgment*

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); Hunter v. Amin, 583 F.3d 486, 489 (7th Cir. 2009). In adjudicating a motion for summary judgment, the Court views the record and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. Zerante v. DeLuca, 555 F.3d 582, 584 (7th Cir. 2009); Hemsworth, II v. Quotesmith.com, Inc., 476 F.3d 487, 490 n.1 (7th Cir. 2007). The Court must therefore not, at this stage of the litigation, "make credibility determinations, weigh the evidence, or decide which inferences to draw from facts; these are jobs for a factfinder." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). "[T]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). The court must therefore "look at the evidence as a jury might, construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true." Payne, 377 F.3d at 770.

11

In order to survive a motion for summary judgment, the nonmoving party must identify specific portions of the record that demonstrate the existence of a genuine triable issue of material fact. Hemsworth, II, 476 F.3d at 490 ("[T]he nonmoving party must identify with reasonable particularity the evidence upon which the party relies."); Murphy v. ITT Technical Servs., Inc., 176 F.3d 934, 936 (7th Cir. 1999); Cornfield v. Consol. High Sch. Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993). On the other hand, a summary judgment movant will prevail where the record as a whole demonstrates that "a rational trier of fact could not find for the non-moving party." Turner v. J.V.D.B. & Assocs., Inc., 330 F.3d 991, 994 (7th Cir. 2003).

## B. The Parties' Motions for Summary Judgment

### 1. Count I: Plaintiffs' Appeal of the IHO's Decision and Order

Plaintiffs make four general assertions in their appeal from the IHO's Decision and Order. First, Plaintiffs assert that the IHO's Decision and Order was "a statement of personal opinion of the IHO, rather than a fair and impartial adjudication based upon a weighing of the evidence, and it did not fairly and impartially decide the issues presented." Compl. ¶ 62. Second, Plaintiffs assert that the IHO denied Plaintiffs the opportunity to discover and present certain evidence. Id. ¶ 63. Third, Plaintiffs assert that the IHO failed to apply the proper legal standards for determining whether their procedural rights were violated, and in particular, misunderstood the legal standards for evaluating District 86's obligations to schedule a mutually agreeable time for an IEP meeting and to reimburse S.H. for the private hearing test done by Reiser . Id. ¶ 67; Pls.' Mot. for S.J. ¶ 4. Fourth, Plaintiffs assert that the IHO improperly weighed the evidence presented to her. Compl. ¶ 69.

12

As to the Plaintiffs' first assertion, the Court finds that there is no basis in the record to support their attack on the IHO's impartiality and fairness. The right to adjudication by an impartial decision maker is of course a bedrock principle of due process. Keith v. Massanari, 17 Fed. Appx. 478, 481 (7th Cir. 2001) (citing In re Murchison, 349 U.S. 133, 136 (1955)). Demonstrating that a decision maker has violated this principle, however, is a difficult task. Administrative adjudicators, as well as judges, are entitled to "a presumption of honesty and integrity." Hoskins v. McBride, 13 Fed. Appx. 365, 369 (7th Cir. 2001) (citing Winthrow v. Larkin, 421 U.S. 35, 46-47 (1975)). In order to overcome this presumption and establish bias, "evidence is required that the decision maker 'had it in' for the party for reasons unrelated to the officer's view of the law." Keith, 17 Fed. Appx. at 481. Plaintiffs have not presented the Court with any evidence whatsoever that the IHO somehow "had it in" for them. It is clear that Plaintiffs disagree with the IHO's ruling, but this simple disagreement, without some evidence that the IHO issued her Decision and Order for reasons other than her view of the facts and the law, is insufficient to establish bias. See Litkey v. United States, 510 U.S. 540, 555 (1994) (an adverse ruling in and of itself is almost never enough to overcome the presumption of impartiality); In re Golant, 239 F.3d 931, 938 (7th Cir. 2001) (without other evidence, bias is not present where a party merely loses on the merits).

Second, Plaintiffs assert that the IHO denied them the right to discover and present evidence. Under the Illinois School Code and the IDEA, the parties to an administrative due process hearing must disclose all evaluations and other evidence they intend to present at least five days before the hearing. 34 C.F.R. § 300.512(b); 105 ILL. COMP. STAT. 5/14-8.02a. There is no indication in the record that either party withheld any information in violation of these

13

statutes. In addition, due process hearings do not provide for the sort of extensive discovery that often occurs in litigation. See Davis v. Ball Mem'l Hosp. Ass'n, 640 F.2d 30, 42 (7th Cir. 1980) (explaining the dangers of turning "a due process hearing into full-scale litigation requiring elaborate discovery."); Renollett v. Indep. Sch. Dist. No. 11, No. 03-6452, 2005 WL 102967, at *5 (D. Minn. Jan. 18, 2005) ("[T]here is no right to discovery in preparation for a local due process hearing."). The Court therefore cannot find that Plaintiffs were improperly denied the opportunity to conduct discovery prior to the due process hearing.

Third, the Court finds that the IHO's findings and decisions regarding whether Plaintiffs' procedural rights were violated are well-supported by the facts and law. The IHO addressed four procedural issues: (a) whether District 86 exceeded the statutory time frame for responding to S.H.'s request for a special education evaluation of B.H.; (b) whether District 86 violated the IDEA by completing its special education evaluation of B.H. after the statutory deadline had passed; (c) whether District 86 violated Plaintiffs' rights under the IDEA by refusing to reimburse S.H. for Reiser's private hearing evaluation of B.H.; and (d) whether District 86 violated Plaintiffs' rights under the IDEA by refusing to schedule an IEP meeting for after-school hours.[4]

Regarding issue (a), the IHO found that District 86 exceeded the statutory ten-day deadline by seven days when it responded to S.H.'s request for a special education evaluation of B.H. See 23 ILL. ADMIN. CODE § 226.520. However, the IHO determined that the seven-day

---

[4] The IHO's determination that the IDEA did not require District 86 to acquiesce in S.H.'s unilateral demand to hold an IEP meeting after school hours came in her Preliminary Order of February 13, 2008. Because Plaintiffs include this issue in their appeal of the IHO's June 4, 2008 Decision and Order, the Court will construe this issue as incorporated within that Decision and Order.

14

delay caused no educational harm to B.H., and therefore did not rise to the level of a violation of the IDEA. The Court agrees. The Seventh Circuit and other courts have held repeatedly that "[p]rocedural flaws do not automatically require the finding of a denial of a [FAPE]." Heather S. v. Wisconsin, 125 F.3d 1045, 1059 (7th Cir. 1997) (quoting W.G. v. Bd. of Trs., 960 F.2d 1479, 1484 (9th Cir. 1992)); C.H. v.Cape Henlopen Sch. Dist., 566 F. Supp. 2d 352, 359 (D. Del. 2008) ("It is only when the mistake compromises the pupil's right to an appropriate education, seriously hampers the parents' opportunity to participate in the formulation process, or causes a deprivation of educational benefits that an IDEA violation occurs. However, minor procedural violations *do not constitute an IDEA violation*."). Here, as the Court has noted, Plaintiffs do not contest whether B.H. was or is receiving a FAPE. The IHO's determination on this matter was therefore in accord with the IDEA, and the Court will not overturn it.

As to issue (b), the IHO correctly determined that District 86 completed its evaluation of B.H. within the sixty school-day statutory time limit. See 23 ILL. ADMIN. CODE § 226.110(d). S.H. granted consent for the evaluation on February 15, 2007, and District 86 completed the evaluation on April 11, 2007, well within the statutory time frame. As to issue (c), the IHO properly found that District 86 was not required to reimburse S.H. for the private hearing evaluation she obtained. There is no indication in the record that S.H. followed the procedures outlined in 23 ILL. ADMIN. CODE § 226.180 for procuring an independent evaluation at the public expense, and the record indicates that Reiser's evaluation was duplicative of the one prepared by District 86's speech pathologist. Regarding issue (d), federal regulations clearly provide that IEP meetings are to be scheduled at a "*mutually* agreed on time and place." 34 C.F.R. § 300.322(a)(2) (emphasis added). The IHO correctly found that the concept of mutual agreement

does not encompass one party's unilateral insistence that an IEP meeting be held at a particular time, especially when that time is after school hours.

As to Plaintiff's fourth and final assertion, that the IHO improperly weighed the evidence, it is not the task of this Court to determine how much weight the IHO should have given to certain testimony or other evidence. In administrative proceedings, these determinations are properly left to the discretion of the administrative hearing officers. See Young v. Barnhart, 362 F.3d 995, 1001 (7th Cir. 2004) ("Weighing conflicting evidence from medical experts, however, is exactly what the ALJ is required to do."). In other words, it is for the IHO, not this court, to make determinations as to which evidence to credit. See id. (citing Books v. Chater, 91 F.3d 972, 979 (7th Cir. 1996)).

In sum, after reviewing the record supporting the IHO's Decision and Order, the Court finds that Plaintiffs have not carried their burden of proof. See Patricia P., 203 F.3d at 466-67. Given the deferential stance the Court must take towards the decisions of administrative officers, the Court can find no reason to overturn the IHO's findings and conclusions. See Sch. Dist. of Wis. Dells, 295 F.3d at 674. The Court therefore affirms the Decision and Order of the IHO.

### 2. Count II: Attorneys' Fees

In Count II of their Complaint, Plaintiffs seek attorneys' fees for the administrative proceedings based on their status as a "prevailing party." Plaintiffs assert that when District 86 voluntarily withdrew its due process claim and agreed to reimburse S.H. for Dr. Lauber's private evaluation of B.H., they prevailed on that issue and are therefore entitled to attorneys' fees. Plaintiffs point to the IHO's Final Disposition Order of August 28, 2007 as proof that they prevailed.

16

The term "prevailing party" has the same meaning under the IDEA as it does in civil rights actions under 42 U.S.C. § 1988. Bd. of Educ. of Downers Grove Sch. Dist. No. 58 v. Steven L., 89 F.3d 464, 468 (7th Cir. 1996). A plaintiff prevails in these actions "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111-12 (1992). This can occur either through a judgment on the merits, or through a settlement enforced by a consent decree. Buckhannon Bd. & Care Home v. W. Va. Dep't of Health and Human Res., 532 U.S. 598, 604 (2001). The Buckhannon court explained, however, that private settlements "do not entail the judicial approval and oversight involved in consent decrees." Id. at 604 n.7. For this reason, private settlements do not have the required stamp of approval from the court system that would confer prevailing party status on a plaintiff. Id. at 605. ("A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change."). Plaintiffs who obtain private settlements therefore are not prevailing parties. Id. at 604-05.

The Seventh Circuit has determined that Buckhannon applies to IDEA cases. Bingham v. New Berlin Sch. Dist., 550 F.3d 601, 603 (7th Cir. 2008) ("If there was any room to argue that the holding in Buckhannon does not apply to the IDEA, that door has long since closed."); T.D. v. LaGrange Sch. Dist. No. 102, 349 F.3d 469, 478 (7th Cir. 2003) ("Today we join the Second and Third Circuits in holding that Buckhannon is applicable to the IDEA . . . [T]he [Buckhannon] Court left the clear impression that private settlements do not involve sufficient judicial sanction to confer 'prevailing party' status.").

17

Here, Plaintiffs claim for attorneys fees is based on a private settlement. Plaintiffs'
assertion that the IHO's Final Disposition Order is sufficient "judicial *imprimatur*" to confer
prevailing party status upon them is unavailing. The Seventh Circuit has explained that where a
private settlement agreement is formalized in a court order so that the parties' compliance with
the settlement terms effectively becomes court-ordered, the settlement agreement may be the
functional equivalent of a consent decree, making the plaintiff a prevailing party. T.D., 349 F.3d
at 478. However, the IHO's Final Disposition Order contains no indication that she is ordering
District 86 to do anything. The Final Disposition Order reads:

> Matters in the above referenced case, filed by the school district on 5/18/07 were
> concluded on 8/28/07. Final action on the case was: Request for Due Process
> Withdrawn on 8/28/07. The Hearing Officer retains jurisdiction over a subsequent
> hearing that involves the same parties and is requested within one year from the date
> of withdrawal of the previous request unless the Hearing Officer is unavailable. 105
> ILCS 5/14-8.02a(f). The parties retain their right to request a hearing in the future,
> consistent with the above statute.
> Date: 8-28-07
> /s/ Carolyn Ann Smaron, Due Process Hearing Officer

Compl., Ex. 3, Final Disposition Order. Plaintiffs are thus not a prevailing party, and are not
entitled to an award of attorneys' fees. See Buckhannon, 532 U.S. at 604-05; Bingham, 550 F.3d
at 603. Summary judgment in favor of District 86 is therefore granted as to Count II of
Plaintiff's Complaint.

### 3. Count III: Disability Discrimination under the Rehabilitation Act

In Count III of their Complaint, Plaintiffs allege that District 86 discriminated against
them on the basis of B.H.'s disability, in violation of the RA, when it refused to schedule an IEP
meeting outside of regular school hours. In order to prevail on this claim, Plaintiffs must show
that: (1) B.H. is a disabled individual under the RA; (2) B.H. was excluded from an educational

18

program or position because of her disability; (3) B.H. was otherwise qualified for the educational program or position she sought; and (4) that the educational program or position she was excluded from is operated by an agency that receives federal funding. Knapp v. Northwestern Univ., 101 F.3d 473, 478 (7th Cir. 1996); Byrne v. Bd. of Educ. of West Allis – West Milwaukee, 979 F.2d 560, 563 (7th Cir. 1992); see also Brewer v. Wis. Div. of Vocational and Rehab. Servs., 21 Fed. Appx. 457, 459 (7th Cir. 2001).

The Seventh Circuit has drawn a distinction between the RA, which prohibits the exclusion of disabled students from educational opportunities on the basis of handicap, and the affirmative obligations of the IDEA, which requires that disabled children be afforded IEPs appropriate to their disability. Timms v. Metro. Sch. Dist., 722 F.2d 1310, 1317-18 (7th Cir. 1983). "Because section 504 forbids exclusion from programs rather than prescribing the programs' content it reaches grosser kinds of misconduct than the [IDEA]." Id. In other words, even where a disabled student plaintiff shows that a defendant school district violated the IDEA, there is a separate and higher standard the plaintiff must meet to demonstrate a violation of Section 504. "Something more than a mere violation of the IDEA is necessary in order to show a violation of section 504 in the context of educating children with disabilities; i.e., a plaintiff must demonstrate that a school district acted with bad faith or gross misjudgment." Tammy S. v. Reedsburg Sch. Dist., 302 F. Supp. 2d 959, 982 (W.D. Wis. 2003).

In this case, the parties agree that B.H. suffers from ADD, satisfying the first element of Plaintiffs' RA claim. See Knapp, 101 F.3d at 478. However, Plaintiffs do not assert that B.H. was ever wrongfully excluded from any educational program within District 86. The parties agree that District 86 refused to schedule an IEP meeting after school hours; however, this refusal

simply does not fall within the bounds of acts prohibited by Section 504, even if it may have been unfair or inconvenient to Plaintiffs in some sense. See id. Summary judgment in favor of District 86 as to Count III of Plaintiffs' Complaint is warranted on these grounds alone.

Moreover, even if District 86's insistence on scheduling this meeting during the school day did somehow fall under the rubric of Section 504, there is no evidence in the record that this was done with discriminatory animus, "bad faith," or "gross misjudgment." See Tammy S., 302 F. Supp. 2d at 982. District 86 has submitted unrebutted evidence that it had invited seventeen District employees plus two District consultants to the IEP meeting. These employees are not contractually obligated to work during evening hours, and two of these employees submitted affidavits indicating that other work or family commitments precluded them from attending evening meetings. In addition, District 86 submitted a letter to Plaintiffs' counsel offering to conduct the IEP meeting on numerous alternative dates, at various times during school hours, while using teleconferencing equipment to facilitate Dr. Lorber's participation. Def's. Am. 56.1 Stmt. of Uncontested Material Facts, Ex. F. Plaintiffs, however, nevertheless continued to insist on an evening IEP meeting. Given this undisputed evidence, the Court finds as a matter of law that District 86's refusal to hold an IEP meeting during after school hours did not constitute an exclusion of B.H. from any educational program because of her disability, nor was District 86's refusal done with "bad faith" or "gross misjudgment." See Knapp, 101 F.3d at 478; Tammy S., 302 F. Supp. 2d at 982. Summary judgment is therefore granted in favor of District 86 as to Count III of Plaintiffs' Complaint.

# IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted in its entirety, and Plaintiffs' Motion for Summary Judgment is denied in its entirety.

IT IS SO ORDERED.

ENTER:

_____

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: March 19, 2010